COMMONWEALTH *vs.* JOHN J. BLODGETT.

Suffolk. November 8, 1978. — March 8, 1979.

Present: QUIRICO, KAPLAN, WILKINS, LIACOS, & ABRAMS, JJ.

*Homicide. Practice, Criminal,* Disclosure of defense witnesses. *Evidence,* Alibi, Prior conviction.

Upon appeal in a capital case, the argument that the trial judge's order precluding the defendant from presenting alibi witnesses violated his constitutional rights was not reached where it appeared that the order, following the defendant's receipt of extensive discovery ordered by the judge and the defendant's failure to accept an offer of the full power of the court to insure that his witnesses would be available to testify, did not result in the exclusion of any of his alibi witnesses, the principal one of whom fled, and that following

rescission of the order the defendant rested without presenting any alibi witnesses. [497-502]

Following the affirmative reply of the defendant on direct examination in a criminal case to the question whether "during the course of [his] life" he had "other convictions for having committed criminal offenses," there was no error in excluding his counsel's attempts to continue this line of questioning. [502-503]

This court's review of the entire record of the conviction of the defendant of murder in the first degree of a student-hitchhiker revealed no facts warranting relief under G. L. c. 278, § 33E. [503]

INDICTMENTS found and returned in the Superior Court on April 23, 1975.

The cases were tried before *McGuire, J.*

*William P. Homans, Jr.,* for the defendant.

*John T. Gaffney,* Assistant District Attorney, for the Commonwealth.

ABRAMS, J. John J. Blodgett seeks reversal of his convictions of murder in the first degree, armed robbery, kidnapping, assault with intent to murder, and assault and battery by means of a dangerous weapon. Blodgett claims that he is entitled to a new trial because the trial judge erred in entering an order precluding him from presenting alibi witnesses during a part of the trial.[1] We affirm Blodgett's convictions. We decline to exercise our power under G. L. c. 278, § 33E, to enter a verdict of a lesser degree of guilt on the charge of murder.

We summarize the evidence. On March 22, 1975, John Asinari and Robert Moses, students at the Massachusetts Institute of Technology, were walking over the Massachusetts Avenue bridge toward their dormitories in Cambridge. They began hitchhiking, and were picked up by a two-door automobile containing two males in the front seat and two in the back. Moses and Asinari joined the two in the back seat. Moses identified the defendant Blodgett as the driver of the vehicle and referred to the front seat passenger as "Shaughnessy."

---

[1] Blodgett does not argue his other assignments of error. Assignments of error not argued are waived. *Commonwealth* v. *Watkins,* 375

Moses and Asinari were confined in the car while Shaughnessy stabbed and shot them as the car travelled about the city.[2] At one stop the two men in the front seat took the students' wallets and both Blodgett and Shaughnessy stabbed at the students, while taunting them, threatening them and laughing. The students begged to be allowed to live. Blodgett and Shaughnessy joked about poking the students' eyes out, and about how they would dispose of the students' bodies. At one point the car stopped and the students fled. The four men in the car pursued Asinari and one of them beat him with a club. Moses hid, and secured aid after the attackers left.

Asinari died from a crushed skull and maceration of the brain, caused by multiple blows to his head. Thirty-five separate stab wounds were found on Asinari's head, neck, back, chest, arms, and hands. A perforation in Asinari's right cheek was caused by a bullet which entered that cheek and exited behind the ear.

The vehicle used in the crime was found in flames on the night of the incident about two miles from where Moses and Asinari were found. A set of keys was found in the ignition. Among the keys was one which fit the door to Blodgett's apartment.

Blodgett took the stand and stated that he had driven the car, which he had previously stolen, to Boston on the evening of the crime. He testified that he went to a bar where he talked to one Robert Shaughnessy. Blodgett stated, however, that when he left the bar he discovered that "his" (stolen) car was missing, and he did not have the keys to either the car or his apartment. Blodgett testified that an acquaintance, Patrick Gates, drove him home in a taxi.

Mass. 472, 474 n.2 (1978). We have examined the matters assigned as error but not argued. We perceive no error in any of the assignments of error so waived. See G. L. c. 278, § 33E.

[2] The two men in the back seat held Asinari up so that Shaughnessy could continue to stab him. At this time Moses was "playing dead." As a result, no further injuries were inflicted on Moses. Although it is not

Blodgett testified that the morning after the attack, he received an anonymous phone call telling him "his" (stolen) car had been involved in a crime. He fled to Connecticut and then to Texas where he was apprehended two years after the incident. The jury convicted Blodgett of all offenses.[3]

We summarize the events concerning the alibi disclosure order. Prior to trial, the Commonwealth filed a motion for the disclosure of the names and addresses of alibi witnesses if an alibi defense was contemplated. By the time of trial, the defendant had received extensive discovery ordered by the judge. The judge, in response to a request by the Commonwealth, allowed the alibi disclosure motion previously filed and ordered compliance by Blodgett. Blodgett refused to comply. The judge stated that he would postpone action in order to "give [Blodgett] time to think" about his refusal to comply with the court's order.

At the start of the third day of trial, the judge told Blodgett that if he was going to assert an alibi defense Blodgett should give the Commonwealth "the names and addresses of the witnesses and the place or places relevant to any claimed alibi defense." Further the judge told Blodgett that he would receive in return whatever information the Commonwealth's investigation as to alibi revealed. The judge told Blodgett that if he did not give the Commonwealth the names and addresses of the alibi witnesses, the "Court will not receive any evidence in regard to an alibi defense." The order, however, was not to apply to Blodgett if he decided to testify.

entirely clear, it appears that Moses did not identify the two men in the back seat at any time.

[3] Blodgett was sentenced to life imprisonment for the first degree murder conviction and to two concurrent life sentences for the two armed robbery convictions. He was sentenced to 18-20 years concurrent for assault with intent to murder, and to two 8-10 year sentences for kidnapping to be served concurrently with each other but from and after the expiration of the life sentence for murder. The indictments

After resting its case on the fifth day of trial, the Commonwealth again sought the names and addresses of the alibi witnesses. Blodgett's attorney did not want to comply with the disclosure order[4] and the judge gave Blodgett's counsel until the afternoon to talk with Blodgett. At a lobby conference later in the day, defense counsel disclosed the names of three alibi witnesses, two of whom he said were present in the court house at that time. Defense counsel stated that the principal alibi witness, Patrick Gates, would testify that he was driving Blodgett home in a taxicab at the time the crime was committed.[5]

Defense counsel stated that Gates was extremely reluctant to testify for fear of being connected with the crime. He said Gates had been interviewed by the police shortly after the crime in a manner which implied he was suspected of being in the car on March 22, 1975. Defense counsel stated that the defendant had refused to disclose the names of the alibi witnesses out of fear that the police would intimidate them and they would refuse to testify.

The judge replied that the witnesses could have been held as material witnesses if there was any danger that they would not appear, or that prosecution interviews could have been conducted in chambers or in the presence of defense counsel. The judge had not yet entered a preclusion order. Blodgett never sought the assistance of the court.

The prosecutor stated that he was surprised and prejudiced by the names of the alibi witnesses, and requested a continuance to allow investigation. The prose-

charging assault and battery by means of a dangerous weapon were placed on file with the defendant's consent.

[4] Defense counsel told the judge that compliance with the disclosure order would "unreasonably furnish the Commonwealth with weapons that can be used in cross-examination that otherwise they would not have . . . ."

[5] The other two witnesses, Kozlowski and Wartsky, would have corroborated Gates's testimony. Defense counsel had been unable to locate or interview Kozlowski. Wartsky was in the court house, but defense counsel stated that he would be of no use without Gates's testimony.

cution asked that a decision on the exclusion of alibi witnesses be postponed until after that investigation. On inquiry by the judge, defense counsel stated that Blodgett would be the first defense witness "[i]mmediately when we get into court." Defense counsel did, however, request an immediate ruling on the exclusion of alibi witnesses. Pressed by defense counsel, the judge ruled that alibi witnesses were excluded. The judge then granted a continuance until the following morning to allow the Commonwealth to investigate the proposed alibi evidence. Blodgett did not object to the continuance.

At a lobby conference the next morning, the district attorney stated that the prosecution was definitely prejudiced by the late disclosure of alibi witnesses. He stated that despite diligent overnight investigation, no helpful witnesses or information had been obtained.

Defense counsel stated that, as feared, Gates had fled the court house within five minutes after questioning, and was nowhere to be found. The judge reiterated his order that Blodgett would not be allowed to offer alibi witnesses.[6]

---

[6] The judge filed a well reasoned memorandum which included the following findings of fact concerning Blodgett's late disclosure:

"1. I find that at the time the Commonwealth asked for disclosure as to the defendant's intention to rely on the defense of alibi, the defendant knew the names and addresses of persons he intended to call as alibi witnesses.

"2. I find that the defendant understood the possible sanctions which could be imposed upon his defense if he refused to comply with the Court's order of disclosure.

"3. I find that the defendant knowingly and intelligently refused to disclose his alibi witnesses as ordered by this Court.

"4. I find that no compelling reason existed for the defendant's non-disclosure of his alibi [witnesses].

"5. I find that the Commonwealth was severely prejudiced by the defendant's timing of his offer of alibi defense. The Commonwealth had at that time rested its case.

"6. I find that the defendant's failure to comply with the Court's order was deliberate and prejudicial to the Commonwealth.

"7. I find that the Commonwealth was surprised by the defendant's offer of an alibi defense.

On the following day, a Friday, just prior to the close of the defendant's case, the defendant renewed his motion to allow alibi witnesses. The Commonwealth stated that it would not object if the alibi witnesses were present in the court house. The judge ruled that the Commonwealth had waived its objection to alibi witnesses, and rescinded his order precluding alibi witnesses.

At the request of defense counsel, the judge ordered a continuance for the remainder of the afternoon to allow him to attempt to locate Gates. When defense counsel was unable to locate Gates, the judge adjourned for the weekend. On Monday morning the defense rested without presenting any alibi witnesses, without a request for a further continuance, and without seeking any assistance from the judge.

Blodgett argues in this court that "the only time [he] was able to bring his key witnesses to the courthouse, he was forbidden to place them on the stand." He argues that the judge abused his discretion in excluding the witnesses because the Commonwealth was not "significantly" prejudiced by his late compliance with the alibi disclosure order, and because there were reasonable, alterna-

---

"8. I find that the Commonwealth was unprepared to meet the defendant's alibi defense, due to the timing of its submission.

"9. I find that granting a continuance to the Commonwealth at the time the defendant offered his alibi defense would not eradicate the prejudice to the Commonwealth's case.

"10. I find that undue hardship, expense, and waste would be occasioned by the empanelled jury if a lengthy continuance were granted.

"11. I find that the publicity attendant on this trial might adversely affect the jurors if a lengthy continuance were granted by the Court.

"12. I find that a lengthy continuance in this case would lessen the impact of the Commonwealth's case upon the jury and the jury deliberations would therefore be affected by such a continuance.

"13. I find that at the least, a lengthy continuance would be essential to the Commonwealth to prepare its case if an alibi defense were to be submitted by the defendant.

"14. I find, given the posture of the Commonwealth's case, that even a lengthy continuance would probably not suffice to save it from prejudice if the defendant were allowed to submit an alibi defense at that time."

tive means of enforcing the order. See *Commonwealth* v.
*Edgerly,* 372 Mass. 337, 343 (1977). Further, Blodgett
claims that the preclusion order violated his constitution-
al right to present witnesses in his own defense, relying
on the Fifth, Sixth and Fourteenth Amendments to the
United States Constitution, on art. 12 of the Massa-
chusetts Declaration of Rights, and on G. L. c. 263, § 5.
Blodgett's contentions are without merit.

The preclusion order did not result in exclusion of any
of Blodgett's evidence. At the close of the Common-
wealth's case, defense counsel clearly stated that Blod-
gett was to be the first defense witness. Blodgett did testi-
fy, and at the end of that testimony, the judge rescinded
the preclusion order. Blodgett was free to present his alibi
witnesses. However, Gates, his principal witness, had fled
and Blodgett could not produce him. The disappearance
of Gates, not the judge's preclusion order, prevented Blod-
gett's presentation of corroborating alibi witnesses.

Gates's failure to appear cannot be attributed to error
by the judge. The judge offered to hold Gates as a material
witness, or to order that all interviews of Gates be con-
ducted in the judge's chambers or in the presence of de-
fense counsel. The judge, in effect, offered Blodgett the
full power of the court to insure that Blodgett's alibi
witnesses would be available to testify. Blodgett neither
accepted the judge's offer to hold or protect Gates, nor
had he placed Gates under summons. Therefore, Blodgett
himself must bear total responsibility for the disappear-
ance of his witness.[7]

The judge's order, later revoked, did not prevent Blod-
gett from presenting alibi witnesses.[8] Thus, we need not

[7] Blodgett was well aware that Gates might flee if not protected.
Defense counsel told the judge that the alibi witnesses might "clam
up" because "the nature of these people are that they're concerned
about police." Further, defense counsel stated that Gates had refused
to appear if he was placed under summons. Moreover, defense counsel
said that Gates had been extremely reluctant to speak to him.

[8] In addition, there is no evidence that the judge's actions in any way
changed the order in which Blodgett intended to offer his evidence.

reach Blodgett's argument that exclusion of alibi witnesses violated his constitutional rights. See *Commonwealth* v. *Edgerly, supra* at 343.[9]

Pursuant to G. L. c. 278, § 33E, we comment briefly on an issue not properly before us because it was neither assigned as error nor argued in this court. During Blodgett's direct examination his counsel asked him whether "during the course of [his] life" he had "other convictions for having committed criminal offenses?" Blodgett replied affirmatively. Counsel then attempted to continue his line of questioning. On objection the questions were excluded and an exception saved. As an offer of proof, Blodgett's counsel stated that he expected to elicit from Blodgett "the number and nature and disposition of the criminal convictions that he has." Thereafter Blodgett, on direct examination, admitted to the commission of certain uncharged offenses, both before and after the events at issue. During the Commonwealth's cross-examination of Blodgett prior convictions were used for impeachment.[10]

The reason for permitting a party to bring out the criminal record of his own witness is to avoid having the jury draw the inference that the party calling the witness had misled or deceived the jury as to the background of the witness. See *Commonwealth* v. *Cadwell,* 374 Mass. 308, 311-312 (1978). However, a party seeking to elicit such information on direct examination remains subject to the trial judge's control as to the order of proof. Cf.

---

See 500-501, *supra.* Cf. *Brooks* v. *Tennessee,* 406 U.S. 605, 606 (1972).

[9] We do not intimate that, if we were to consider the question, we would find the preclusion sanction unconstitutional. See *State* v. *Dodd,* 101 Ariz. 234, 237 (1966); *State* v. *Grant,* 10 Wash. App. 468, 475 (1974); 1 C. A. Wright & A. R. Miller, Federal Practice and Procedure § 203, at 185-186 (Supp. 1979).

[10] The judge, in his charge, properly instructed the jury as to the purpose for which they could consider the convictions. Blodgett took no exception to this instruction.

*Commonwealth* v. *Coviello,* 7 Mass. App. Ct. 21, 25 & n.4 (1979), further appellate review granted, *post* 920 (1979). Blodgett's direct testimony clearly brought his character and background to the jury's attention. As Blodgett's case evolved, it negated any valid claim of prejudice, abuse of discretion or error of law in excluding questioning on direct examination as to prior convictions.

We deny Blodgett's request for relief under G. L. c. 278, § 33E. The jury could have found him guilty of murder in the first degree on any theory, premeditation, felony murder, or extreme atrocity or cruelty. Our review of the entire record reveals no facts warranting a new trial or entry of a verdict of a lesser degree of guilt. See *Commonwealth* v. *Brown,* 376 Mass. 156, 166-168 (1978).

*Judgments affirmed.*