COMMONWEALTH *vs.* HENRY YOUNG.

Suffolk. April 22, 1980. — August 19, 1980.

Present: GREANEY, DREBEN, & KASS, JJ.

*Witness,* Impeachment. *Evidence,* Judicial discretion, Order of proof, Bias of government witness. *Joint Enterprise.*

At an arson trial, an inquiry by the Commonwealth on direct examination of its principal witness, an admitted arsonist, into rewards and inducements offered to him in exchange for his cooperation, which elicited testimony as to arrangements made to insure the witness's personal safety, was not prejudicial to the defendant where the judge took the requisite steps to prevent the import of his testimony from being misunderstood or misapplied by the jury. [411-412]

At the trial of two defendants on a theory of joint criminal enterprise, the judge did not err in giving the jury, at the close of the Commonwealth's case, a preliminary instruction that they must find beyond a reasonable doubt that the defendants were involved in a joint enterprise before they could apply the statements of one defendant to the other. [412-415]

INDICTMENTS found and returned in the Superior Court on October 13, 1977.

The cases were tried before *Dwyer,* J.

*Clyde D. Bergstresser* for the defendant.

*John J. Bonistalli,* Assistant Attorney General, for the Commonwealth.

KASS, J. The defendant Young was convicted by a jury on indictments charging him with arson (G. L. c. 266, § 2) and arson with intent to defraud an insurer (G. L. c. 266, § 10).

A principal witness for the Commonwealth was George Lincoln who, in response to the standard question about the occupation of a witness, answered, "I was a building contractor. I speculated in real estate, and I was available for hire to burn property. I was an arsonist, sir." Lincoln

testified that he had received a telephone call from Young in which Young said that he had a client who owned a night club in Boston "that he wants to sell to the insurance company." Young, according to Lincoln, said he had a financial interest in the property concerned, 24-30 LaGrange Street, and guaranteed payment to Lincoln for his services. Within forty-eight hours a portion of the property burned.

Young's appeal raises two issues: (1) Was an inquiry by the Commonwealth on direct examination of Lincoln into rewards and inducements offered to him in exchange for his cooperation so wide ranging as to be unfairly prejudicial to the defendant? (2) Was the timing of a preliminary instruction to the jury about joint criminal enterprise so out of joint as to constitute error?

1. *Anticipatory examination by the Commonwealth about inducements offered to its own witness.* During its direct examination of Lincoln, the prosecution, over the objection of defense counsel, asked Lincoln what he expected by way of reward, favor or inducement from the Commonwealth in exchange for his testimony. Lincoln testified that he had no agreement with the Commonwealth as to the specific case being tried, but that in exchange for his cooperation with investigations into a series of arson and arson-related crimes all over Massachusetts, the Attorney General agreed to protect him and his family from bodily harm or death by criminals against whom he might testify. In addition, Lincoln said that following disposition of indictments against him, the Attorney General would recommend that Lincoln, for his personal safety, not be incarcerated in any institution in the Commonwealth; that the Attorney General would make known to Federal and local officials the full extent of Lincoln's cooperation; and that if he were not imprisoned in Massachusetts, he would receive assistance in relocating and changing his name and those of his wife and children.

The defendant contends that this testimony, not particularized to Young's case, was prejudicial to him because the inferences to be drawn from it were that Young was in-

volved with organized crime, with the broad range of arson offenses in which Lincoln participated, and with criminal elements who were likely to assassinate Lincoln.

It is always open to the defense, of course, to attack the credibility of a witness on cross-examination by questioning him about inducements given or agreements made by the prosecution. *Commonwealth* v. *DeBrosky,* 363 Mass. 718 726-727 (1973). *Commonwealth* v. *Dominico,* 1 Mass. App. Ct. 693, 713-714 (1974). *United States* v. *Partin,* 493 F.2d 750, 757-760 (5th Cir. 1974). So as to avoid the dramatic impact of having understandings with the government extracted from its witness on cross-examination, the Commonwealth may, on direct examination, inquire into matter bearing on possible bias of the witness. Otherwise it might appear the prosecution is trying to conceal damaging information from the jury.[1] *Commonwealth* v. *Cadwell,* 374 Mass. 308, 312 (1978). Neither side has an "unalterable prerogative to bring out these facts at a particular time and 'in a perhaps more dramatic way.'" *Commonwealth* v. *Coviello,* 378 Mass. 530, 533 (1979), quoting *Cadwell* at 312. Who will offer information of this kind is a question of the order of proof which is to be determined by the trial judge in the exercise of his discretion. *Commonwealth* v. *Blodgett,* 377 Mass. 494, 502-503 (1979).

Where, as here, the examination brings out testimony about crimes the witness has committed and threats against his personal safety, from which "the jury may leap improperly to conclusions about the guilt of the defendant," *Commonwealth* v. *Cadwell,* 374 Mass. at 312-313, the matter "must be handled delicately," and the prosecution should not be allowed to exploit the prophylactic questioning. *United States* v. *Partin,* 552 F.2d 621, 645 (5th Cir.). cert. denied, 434 U.S. 903 (1977). "[T]here is peculiar need

[1] This is not the first case to come before this court in which Lincoln went through an anticipatory examination concerning his agreements with the Commonwealth. See *Commonwealth* v. *Zeigler,* 9 Mass. App. Ct. 833 (1980), in which the argument made by the defendant in this case was not raised.

for a measured instruction about the inferences that the jury can or cannot legitimately draw from the particular testimony." *Commonwealth* v. *Cadwell*, 374 Mass. at 313.

In the instant case we find no exploitation by the Commonwealth. The Commonwealth did not follow up Lincoln's description of the rewards, promises and inducements he had received with further questions about the threats to his safety, nor did the Commonwealth mention those threats in closing argument. The Commonwealth did, in its summation, discuss the promises and inducements made to Lincoln, but solely as they might bear on Lincoln's credibility. For his part, the trial judge instructed the jury twice during this line of questioning that the sole purpose of Lincoln's testimony about agreements with the Commonwealth was to assist the jury in evaluating Lincoln's credibility and that his testimony was not to be taken as an allegation that the defendants (there was a codefendant on trial) had threatened Lincoln. In his final instructions the judge reminded the jury that the plea bargaining between the Commonwealth and Lincoln was not evidence of the defendant's guilt, but was to be used only in assessing Lincoln's credibility. Before Lincoln testified on the inducements issue, the trial judge had ascertained that Young's counsel would not waive cross-examination on the subject.[2] We conclude that the judge exercised his discretion with care and took the requisite steps to prevent the import of Lincoln's testimony about inducements from being misunderstood or misapplied by the jury.

2. *Instructions on joint enterprise.* At the beginning of the trial, the judge explained to the jury the theory of joint criminal enterprise and instructed them that until further instruction was given, certain evidence would be limited to one or the other of the two defendants on trial. At the close

---

[2] In a case where defense counsel waived the right to interrogate a prosecution witness, anticipatory inquiry into the subject by the government would, presumably, not be apt.

of the prosecution's case, the Commonwealth requested that these limitations be removed. The judge did not remove the limitations, but instructed the jury that it was up to them to determine beyond a reasonable doubt whether the defendants were involved in a joint enterprise; and that when they came to examine the evidence, they might determine whether the defendants were joint entrepreneurs and, if so, they might apply the acts and declarations of one defendant against the other. The defense objected, and now argues that it was premature to give the instruction to the jury before the close of all the evidence, and that the judge should first have made a legal determination that the evidence would support a finding of joint enterprise.

Generally, before admitting evidence of acts or statements by one defendant against another defendant, the trial judge must make a preliminary finding that a prima facie conspiracy exists. *Commonwealth* v. *Dominico,* 1 Mass. App. Ct. at 717. The judge here did not explicitly state to the jury that he had made such a finding. (See *United States* v. *Richman,* 600 F.2d 286, 296 [1st Cir. 1979], relied on by Young, in which the appellant complained because the finding *was* communicated to the jury.) However, sufficient evidence had come in through Lincoln to enable the judge to find that a joint enterprise existed.

Ultimately, whether a joint enterprise existed was for the jury. *Commonwealth* v. *McDermott,* 255 Mass. 575, 581 (1926). The instant case was tried in the usual manner of conspiracy cases: evidence was admitted against each defendant separately as it affected that defendant, "and then, when sufficient evidence [had] accumulated to support a fair inference of the existence of a conspiracy [the limitation on evidence was removed], so that the evidence of the acts, knowledge and admissions of all who [were] found to have joined . . . [became] applicable against all . . . ." *Commonwealth* v. *Benesch,* 290 Mass. 125, 132-133 (1935). *Commonwealth* v. *Flynn,* 362 Mass. 455, 477 (1972). See *Segansky* v. *United States,* 358 F.2d 195, 201 & n.9 (1st Cir. 1966). The trial judge's determination in the case at bar

that the Commonwealth had made out a prima facie case of joint enterprise at the close of its evidence is implicit from a study of the record. His choice not to announce his finding avoided any risk of invading the fact-finding function of the jury. See *DeJoinville* v. *Commonwealth,* 381 Mass. 246, 251-252 (1980); *Commonwealth* v. *DiSanto,* 8 Mass. App. Ct. 694, 710-711 (1979).

We do not perceive prejudice to the defendant by the judge's electing, at that stage in the trial, to instruct the jury that they must find beyond a reasonable doubt that the defendants were involved in a joint enterprise before they could apply the statements of one defendant to the other. See *Commonwealth* v. *Beckett,* 373 Mass. 329, 337, 340-341 (1977). The judge did not, as the defendant claims, instruct the jury to begin their deliberations at the time as to whether a joint enterprise existed. Correct instructions on this issue were restated in the judge's comprehensive instructions to the jury at the conclusion of the trial.

*Judgment affirmed.*