COMMONWEALTH *vs.* ARNOLD J. ELY.

Essex.  October 6, 1982. — January 26, 1983.

Present: HENNESSEY, C.J., WILKINS, ABRAMS, NOLAN, & O'CONNOR, JJ.

*Homicide. Practice, Criminal,* Instructions to jury, Capital case, Assistance of counsel. *Malice. Joint Enterprise.*

At the trial of indictments charging first degree murder and arson, the judge did not err in declining to instruct the jury on involuntary manslaughter where there was no evidence which would warrant an inference that the arson was unintentional or the consequence of wanton or reckless conduct. [71-72]

At the trial of an indictment charging arson, the judge's jury instructions defining malice did not create a substantial risk of a miscarriage of justice inasmuch as the case was tried on the theory that arson had been committed and identity of the arsonist was the sole contested issue. [74]

At the trial of an indictment charging arson, the judge properly instructed the jury respecting joint enterprise where there was sufficient evidence, including testimony that the defendant and another had been seen fleeing together from the scene of the fire, as well as their similar false statements to police, from which the jurors could have inferred the existence of a joint venture. [74-75]

At the trial of indictments charging murder and arson, the judge's instructions to the jury that it was reasonable to infer that persons ordinarily intend the natural and probable consequences of their acts did not impermissibly shift the burden of proof to the defendant where the instructions clearly permitted, but did not require, the jurors to infer intent. [75-76]

At the trial of an indictment charging assault with intent to murder, the judge's unobjected-to instructions equating, on four occasions, the intent to do serious bodily harm with murder in the first degree, did not create a substantial risk of a miscarriage of justice when viewed in light of defense counsel's trial tactics. [76-77]

A claim of ineffectiveness of counsel for the defendant in a criminal case was not supported by the fact that a person with information potentially favorable to the defendant was not called as a witness where defense counsel made numerous efforts, with assistance from the Commonwealth and the trial judge, to secure that person's presence. [77-78]

INDICTMENTS found and returned in the Superior Court Department on January 7, 1980.

The cases were tried before *Adams, J.*

*Charles M. Burnim* for the defendant.

*Lila Heideman,* Assistant District Attorney, for the Commonwealth.

ABRAMS, J.  After a trial by jury, the defendant, Arnold J. Ely, was convicted of murder in the first degree, G. L. c. 265, § 1; assault with intent to commit murder, G. L. c. 265, § 15; and burning of a dwelling house (arson), G. L. c. 266, § 1.[1]

On appeal, the defendant claims error in the denial of his request that the jurors be instructed on involuntary manslaughter.  Pursuant to G. L. c. 278, § 33E, Ely argues that the judge's instructions on malice, joint enterprise, intent, and assault with intent to commit murder all were erroneous. He also claims that he was denied effective assistance of counsel.  Ely requests that we exercise our power under G. L. c. 278, § 33E, to reduce the verdict to a lesser degree of guilt.  We conclude that there is no reversible error, and no substantial likelihood of a miscarriage of justice.  G. L. c. 278, § 33E.  Therefore, we affirm Ely's convictions and decline to exercise our power under G. L. c. 278, § 33E, in favor of the defendant.

We summarize the facts.  In September, 1977, Ely, then sixteen years old,[2] lived at the home of Albert Schrempf as a

---

[1] On the conviction of murder in the first degree, the defendant was sentenced to life imprisonment at the Massachusetts Correctional Institution, Walpole.  On the arson conviction, he was sentenced to a concurrent term of ten to fifteen years' imprisonment.  On the conviction of assault with intent to commit murder, Ely was sentenced to a concurrent term of eight to ten years' imprisonment.

[2] Ely was sixteen at the time he committed the offenses charged.  He was not apprehended until he was over eighteen years of age.  Pursuant to G. L. c. 119, § 72A, a juvenile transfer hearing was held.  After the hearing, the judge made findings of fact and determined that the Commonwealth had established that there was probable cause to believe the defendant committed the offenses, and that the public interest required dismissal of the juvenile complaints and the trial of the defendant as an adult.  G. L. c. 119, § 61.  See *Commonwealth* v. *Hill,* 387 Mass. 619 (1982).  On appeal, Ely does not challenge this transfer.

foster child. Also living at the Schrempf home were Schrempf's two natural sons, seventeen year old Alan and thirteen year old David, and David Gosselin, a special needs foster child, age fifteen.[3] Ely lived with the Schrempfs for nearly five weeks prior to the burning of their house on September 14, 1977.

Approximately two weeks before the fire, Ely had a quarrel with David Schrempf. In the course of the argument, he said, "I'm going to burn your stinking house down. . . . I'm going to get you and I'm going to get your brother. . . . So you'll both die. . . . I'll put a padlock on your brother's door. . . . Then I'll go up and put one [on] the bathroom door and climb out through the window and down on the porch."

On September 14, 1977, a flash fire started on the porch of the Schrempf home. As a result of the fire, Alan Schrempf died, and David Schrempf lapsed into a coma from which he has never recovered. Arson experts ruled out accident as the cause of the fire. The experts all were of the opinion that the fire was deliberately set, and that gasoline was used as the incendiary agent. Gosselin said he observed Ely spreading the gasoline in the kitchen and on the porch, and that he saw Ely throw a match "on top of the gas."[4]

Ely admitted that he knew the Schrempfs kept the front door secured with ropes, and that other than the porch, there was no exit to the outside. He knew that the Schrempfs kept gasoline in their garage. However, Ely said that it was Gosselin who deliberately and purposefully set the fire to murder David Schrempf.[5]

1. *Failure to instruct on involuntary manslaughter.* The defendant objected to an instruction that if the jurors found

---

[3] Key Foster Care Program, a community based program under contract with the Commonwealth to place Department of Youth Services "clients," placed Ely and Gosselin in the Schrempf household.

[4] In November, 1979, Gosselin pleaded guilty to charges of manslaughter based on the death of Alan Schrempf and arson of the Schrempf home.

[5] Additional evidence will be set forth in our review of the substantive claims.

Ely guilty of arson, and if as a result of that arson Alan
Schrempf died, then the jurors could convict Ely of murder
in the second degree. Ely claims that his testimony, that he
did not know whether Alan Schrempf was in the house at
the time of the arson, required an instruction on involuntary
manslaughter. We do not agree.

The undisputed evidence is that the fire was deliberately
set at the only exit which was not "roped shut," thereby pre-
cluding any person in the house from escaping after the
porch was ignited. At trial, Ely claimed that Gosselin, with
deliberately premeditated malice aforethought, set fire to
the Schrempf home to murder David Schrempf. Although
Ely said he was present when the fire was set, he denied set-
ting the fire or aiding or assisting Gosselin in setting the fire.
Based on the record, including Ely's statement that he was
merely present when Gosselin committed the criminal acts,
see *Commonwealth* v. *Benders*, 361 Mass. 704, 708 (1972),[6]
"there is no evidence . . . which would warrant a jury in
drawing an inference that the [arson] was unintentional or
the consequence of wanton or reckless conduct." *Common-
wealth* v. *Wilborne*, 382 Mass. 241, 246 (1981).

2. *Appellate challenges to the jury instructions.* Pursu-
ant to G. L. c. 278, § 33E, Ely argues that the judge's in-
structions on malice, joint enterprise, intent, and assault
with intent to commit murder, were flawed, and that there-
fore a new trial is required. Alternatively, he argues that
we should reduce the verdict to a lesser degree of guilt. At
trial, Ely's defense was that it was Gosselin who, with delib-
erately premeditated malice aforethought, set fire to the
Schrempf home to murder David Schrempf. Gosselin, ac-
cording to Ely, was so motivated because David Schrempf
owed Gosselin money. The case was tried on the theory
that the sole disputed issue was the identity of the perpetra-

---

[6] The judge instructed the jury that Ely could not be found guilty if he
"was [merely] a spectator and not aiding in any way or assisting Gosselin."
He also informed the jury that the defendant was not "criminally respon-
sible" for Gosselin's conduct if Ely were present and failed to stop Gosselin
from setting the fire.

tor.[7] In making his appellate claims, he abandons his trial strategy. He focuses on the instructions without consideration of the theory on which the case was tried.

"We look askance when counsel who has tried a case, without success, before a judge and jury on one theory of law, then attempts to obtain appellate review on an entirely different theory which was never advanced or suggested at the trial and which is not based on any objection . . . . Our view is the same notwithstanding the fact that the defendant is being represented on these appeals by counsel other than the one who represented him at the original trial. Neither the conventional type of appellate review permitted in a criminal case, nor the special type prescribed by G. L. c. 278, § 33E, for a 'capital case,' is intended to afford an opportunity, from the vantage point of hindsight, to comb the trial record for interesting questions which could have been, but in fact were not, raised at the trial, or to attempt to convert the consequences of unsuccessful trial tactics and strategy into alleged errors by the judge." *Commonwealth v. Johnson*, 374 Mass. 453, 465 (1978). *Commonwealth v. Lee*, 383 Mass. 507, 512-513 (1981). *Commonwealth v. Underwood*, 358 Mass. 506, 510-511 (1970). See *Commonwealth v. Mandeville*, 386 Mass. 393, 408 (1982) (a defendant cannot "argue error on the basis of a theory that was not presented at trial"). *Commonwealth v. Gullick*, 386 Mass. 278, 281 (1982).

"In support of his conclusions [Ely also] parses the charge and attacks it piecemeal. We, however, view the charge in its entirety since the adequacy of instructions must be determined in light of their over-all impact on the jury." *Commonwealth v. Sellon*, 380 Mass. 220, 231-232 (1980). See *Commonwealth v. Cundriff*, 382 Mass. 137, 153 (1980), cert. denied, 451 U.S. 973 (1981). Moreover, in determin-

---

[7] At trial, each blamed the other as the "only realistic escape for either [Ely or Gosselin] was to blame the other." *Commonwealth v. Moran*, 387 Mass. 644, 659 (1982). The Commonwealth, therefore, did not attempt to join both Gosselin and Ely in a single trial but disposed of Gosselin's case first.

ing whether the instructions create a substantial risk of a miscarriage of justice, we view the absence of any objections to the instructions as relevant. See *Commonwealth* v. *Tavares*, 385 Mass. 140, 148 (1982).

a. *Malice*. Relying on *Commonwealth* v. *Niziolek*, 380 Mass. 513, 526-527 (1980), Ely claims error because the judge's instructions failed to define malice. We do not agree. In *Niziolek*, the judge instructed the jurors that they "could not rely on the 'common English usage' of malice." *Id.* at 526-527. The judge then told them that the element of malice in arson had its "'ordinary meaning in criminal law'" but he failed to define malice at all. *Id.* at 527.

Unlike the instructions in *Niziolek*, the judge in this case told the jurors that the requirement that the act be wilful eliminated accidental or negligent fires, and that, in order to convict a person of arson, the jurors must find malice. He informed them that "malice in arson may be inferred from the wilful doing of the act of burning without legal justification."[8]

We add that "[t]he propriety of the charge as to malice was not in issue. The case was tried and argued by both parties on the theory that [arson] had been committed. The issue contested by the defendant was solely that of the identity of the [arsonist]." *Commonwealth* v. *Lee*, 383 Mass. 507, 512 (1981). See *Commonwealth* v. *Pisa*, 384 Mass. 362, 363-364 (1981). We conclude that the malice instruction did not create a substantial risk of a miscarriage of justice.

b. *Joint enterprise*. Ely contends that the judge erred in instructing the jurors that they could convict Ely of arson if they found that Gosselin set the fire, and that there was a joint enterprise between Ely and Gosselin. Ely asserts that the jury should not have been instructed on joint enterprise because there was no evidence from which a joint venture could be inferred. We do not agree.

---

[8] The judge also defined malice again in the instructions on malice aforethought required for assault with intent to murder, and murder.

Although Gosselin and Ely each blamed the other for setting the fire, they were seen fleeing from the Schrempf home together shortly before the fire was discovered. Both admitted that, on the night of the fire, they left the Schrempf house together, went to a wharf and a coffee shop together, and that they talked together before giving the police a statement. Both men falsely stated to the police that they had left the Schrempf home one-half hour prior to the fire. Thus, there was evidence from which the jurors could infer a joint enterprise. See *Commonwealth* v. *Scanlon*, 373 Mass. 11, 18 (1977).[9] "[A] fair reading of the instructions, not treated in isolation but considered in light of the entire charge . . . permitted the jury to determine the purpose and extent of the joint venture." *Commonwealth* v. *Ambers*, 370 Mass. 835, 840 (1976).[10]

c. *Instructions that persons ordinarily intend the natural and probable consequences of their acts.* Ely also contends that the judge erred in instructing the jurors that "[a]s a general rule, it is reasonable to infer that persons ordinarily intend all of the natural and probable and ordinary consequences of their acts knowingly done or knowingly omitted. So unless the evidence in this case leads you to a different or contrary conclusion, you may infer and find that the defendant intended all of the natural and probable consequences which one standing in like circumstances and possessing like knowledge should reasonably have expected to

---

[9] The judge told the jurors that if "the defendant either did or intentionally assisted another in the commission of this crime of arson, and [he must do it] sharing with that person who set the fire the mental state required for [arson]; that is, the willfulness and maliciousness of deliberately setting the fire without legal justification; he must share that mental state." The judge also told the jurors that they must find that Ely "intended, by setting or aiding another in setting the fire, to murder David Schrempf." He then went on to define malice aforethought and deliberately premeditated malice aforethought.

[10] The judge told the jurors that it was their decision whether to infer a joint enterprise from the evidence: "I am not suggesting anything to you along these lines — that is entirely up to you." See *Commonwealth* v. *Young*, 10 Mass. App. Ct. 410, 414 (1980).

result from any act knowingly done or knowingly omitted." [11]

Ely claims that this instruction by use of the word "inference," rather than "presumption," merely "skirts" the unconstitutionality condemned by *Commonwealth* v. *Callahan,* 380 Mass. 821 (1980), and *DeJoinville* v. *Commonwealth,* 381 Mass. 246 (1980). He claims that in spite of the word "inference," the instruction is prejudicial because it impermissibly shifted the burden of proof to him. See *Sandstrom* v. *Montana,* 442 U.S. 510, 523-524 (1979). We disagree.

*Sandstrom* does not invalidate the use of an "entirely permissive inference or presumption, which allows — but does not require — the trier of fact to infer the elemental fact from proof by the prosecutor of the basic one and which places no burden of any kind on the defendant." *County Court of Ulster County* v. *Allen,* 442 U.S. 140, 157 (1979). *Sandstrom* v. *Montana, supra* at 517. The instructions at issue clearly permitted, but did not require, the jurors to infer intent. Cf. *Commonwealth* v. *Stillwell,* 387 Mass. 730, 732 & n.2 (1982). [12]

d. *Assault with intent to murder.* The judge correctly instructed the jurors on deliberately premeditated malice aforethought. [13] Regrettably, the judge on four occasions [14]

---

[11] Before giving this portion of the charge, the judge instructed the jurors that "the fact upon which the inference is to be drawn must be proved . . . beyond a reasonable doubt. . . . [The facts] must be consistent with each other . . . [and] with other facts. It must be consistent, or you must reject the inference, even though it appears to be reasonable. And all inferences that you [the jury] draw must be consistent with the main fact, that is, the fact to be proved or not to be proved."

[12] Although the judge used some "finding" language in the charge, see *Commonwealth* v. *Medina,* 380 Mass. 565, 578 (1980), the instructions clearly place the burden of proof on the Commonwealth. See *Commonwealth* v. *Fitzgerald,* 380 Mass. 840, 843 (1980).

[13] The jurors also were instructed that a defendant who, with deliberately premeditated malice aforethought, intends to kill one person, but instead kills another, can be charged with and convicted of murder. *Commonwealth* v. *Hawkins,* 157 Mass. 551, 553 (1893). 2 C. Torcia, Wharton's Criminal Law § 144 (14th ed. 1979).

[14] One occasion was by example.

equated the intent to do serious bodily harm with murder in the first degree. The defendant did not object to this portion of the instructions. Thus, we consider whether the error in the judge's instructions created a substantial likelihood of a miscarriage of justice. *Commonwealth* v. *Tavares*, 385 Mass. 140, 148 (1982). We conclude that there is no substantial risk of a miscarriage of justice.

Ely's case was tried on the theory that the intent to murder David Schrempf by setting fire to the Schrempf home was murder in the first degree, and that it was Gosselin who, with deliberately premeditated malice aforethought,[15] had murdered one of the Schrempfs. The jurors concluded such conduct warrants a conviction of murder in the first degree. They rejected Ely's claim that it was Gosselin, not Ely, who acted with deliberately premeditated malice aforethought. Viewed in light of Ely's trial tactics, we conclude that the instructions do not create a substantial risk of a miscarriage of justice.

3. *Ineffective assistance of counsel.* On appeal, the defendant asserts that his trial counsel's performance was "below that required, prejudiced the defendant, and thereby constituted a denial of effective assistance of counsel.[16] Ely bases his claim on the assertion that a person to whom Gosselin allegedly admitted setting the fire was not called as a witness. See *Commonwealth* v. *Saferian*, 366 Mass. 89 (1974).

The record shows that defense counsel made numerous efforts to locate the witness, and that defense counsel asked

---

[15] In his instructions, the judge limited consideration of felony-murder based on arson to murder in the second degree.

[16] Appellate counsel in his brief also contends that Ely was prejudiced by his counsel's failure to make motions for required findings of not guilty, see Mass. R. Crim. P. 25, 378 Mass. 896 (1979), and his failure to file any written requests for instructions or to object to any instructions other than those on second degree felony-murder, see Mass. R. Crim. P. 24, 378 Mass. 895 (1979). Appellate counsel has not indicated any evidence in the record, nor any law, to support his contention that deciding not to take such action was "manifestly unreasonable," *Commonwealth* v. *Adams*, 374 Mass. 722, 728 (1978), so that the defendant was denied "an otherwise available, substantial ground of defence," *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974).

for and received assistance from the Commonwealth and from the judge to try to secure the witness's presence.[17] There is nothing in the record to indicate that the failure to secure the witness's presence was a result of "serious incompetency, inefficiency, or inattention of counsel." *Commonwealth* v. *Saferian,* 366 Mass. 89, 96 (1974).[18]

4. *Relief pursuant to G. L. c. 278, § 33E.* The defendant requests that we exercise our power under § 33E, to reduce the conviction of murder in the first degree to a lesser degree of guilt, in the event that we reject his appeal on the specific issues raised. Consistent with our duty under § 33E, we have considered the entire case on the law and evidence, and conclude that the verdict on the indictment for murder in the first degree was neither against the law nor against the weight of the evidence, and that the interests of justice do not require either a new trial or entry of a verdict of a lesser degree of guilt than that found by the jury.

On the convictions of arson and assault with intent to murder, the defendant is not entitled as of right to appellate review of alleged errors not based on a timely objection. Citing *Commonwealth* v. *Palmer,* 386 Mass. 35, 38 (1982), Ely urges this court to consider the arson and assault with intent to murder convictions pursuant to G. L. c. 278, § 33E, because these charges were "closely tied with the murder." We have considered the errors alleged and conclude that these convictions also should be affirmed.

*Judgments affirmed.*

---

[17] The record reflects repeated conversations between counsel and the prosecutor in the presence of the judge. As a result of counsel's requests, extensive efforts were made by the Massachusetts State Police to locate the witness. Frequent telephone calls were made to the witness's home in an effort to secure the presence of the witness.

[18] Nor does the record contain any affidavit from the witness which, if believed, might require a hearing. See Mass. R. Crim. P. 30, 378 Mass. 900 (1979); G. L. c. 278, § 33E. Thus, appellate counsel has not demonstrated that "better work might have accomplished something material for the defense." *Commonwealth* v. *Satterfield,* 373 Mass. 109, 115 (1977).