## COMMONWEALTH vs. TYRONE WEAVER.

Suffolk.   May 6, 1985. — July 3, 1985.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, & O'CONNOR, JJ.

*Identification. Evidence,* Prior inconsistent statement. *Homicide. Practice, Criminal,* Instructions to jury. *Witness,* Credibility.

At a murder trial in which the issue of identification was contested, the Commonwealth was entitled to bolster the credibility of a witness by introducing evidence of her identification of the defendant's photograph from a series shown her by police shortly after the victim was shot, even though this evidence informed the jury that the defendant had had a prior involvement with the police, where the circumstances that the witness had spoken about the incident on numerous occasions with other witnessess prior to trial and that she had been present in court during other witnesses' testimony at the defendant's probable cause hearing would otherwise have supported a jury argument by the defendant that the witness's in-court identification of him was the product of suggestion occurring after the incident. [309-310]

The defendant at a murder trial was not entitled to have a witness's unsworn prior inconsistent statement admitted in evidence as tending to prove the truth of the matter asserted, and the jury were properly instructed to consider the statement solely for impeachment purposes. [310-311]

At a murder trial, the judge's instructions to the jury on manslaughter properly explained to them the meaning of adequate provocation and sufficiently explained the concept of "cooling off" as it relates to manslaughter. [311-313]

The judge at a murder trial was not required to instruct the jury that, in assessing a witness's credibility, they could draw a negative inference from the witness's failure promptly to inform the authorities of her knowledge of the events. [313]

INDICTMENTS found and returned in the Superior Court Department on October 19, 1983.

The cases were tried before *Robert A. Mulligan,* J.

*Robert L. Sheketoff* for the defendant.

*Michael J. Traft,* Assistant District Attorney, for the Commonwealth.

O'CONNOR, J. The defendant and his brother, Darrell Weaver, were tried before a jury. The defendant was convicted of murder in the first degree, and of unlawfully carrying a firearm, and was sentenced to life imprisonment for the murder and to a term of four to five years for unlawfully carrying the firearm, to be served concurrently. Pursuant to G. L. c. 278, § 33E (1984 ed.), he appeals to this court.[1] He argues that the trial judge erred by (1) allowing testimony concerning a pretrial photographic identification of the defendant; (2) instructing the jury that they could consider a prior inconsistent statement of a witness, not made under oath, solely for impeachment purposes; (3) giving an inadequate jury instruction on manslaughter; and (4) refusing to instruct the jury that, in assessing a witness's credibility, the jury could draw a negative inference from the witness's failure to promptly inform the authorities of his knowledge of the events. Although the defendant claims a denial of his Federal and State constitutional rights as a result of the asserted errors, his arguments are largely, although not entirely, based on common law principles. We affirm the judgments.

The jury could have found the following facts. Late in the evening of August 3, 1983, an argument broke out near the intersection of Blue Hill Avenue and Castlegate Road in the Roxbury section of Boston. The argument pitted the victim, Michael Owens, and a few friends against the defendant, a few of his friends, and his brother, Darrell Weaver. Words led to blows. The defendant and others punched Owens. Owens left the scene of the argument and went to a nearby building where his cousin lived. Owens remained with his cousin for ten to fifteen minutes, during which time several Boston police officers dispersed the crowd that had gathered in the street. After the police officers left, everyone returned to the street, and the defendant and Owens resumed their argument. No

---

[1] Darrell Weaver was tried for unlawfully carrying a firearm, and was convicted. His appeal is not before us.

punches were thrown and the defendant left the scene. About ten minutes later, he returned. After saying, "Fuck all this talking," the defendant pulled a gun from a jacket that he had draped over his arm and hit Owens on the mouth with it. Owens staggered backwards into the doorway of a nearby building, and, as he began to climb the building's stairs to escape from the defendant, the defendant aimed the gun and shot Owens in the back.

1. *Testimony Concerning the Photographic Identification.* Marquetta Owens, the victim's sister, testified that she saw the shooting, and she made an in-court identification of the defendant as the person who shot her brother. Over the defendant's objections, she testified that while at the Boston City Hospital after the shooting, detectives showed her a series of photographs from which she selected two: one of the defendant and one of Darrell Weaver. Also over the defendant's objection, Detective James Curran gave similar testimony about the photographic identification at the hospital. Marquetta Owens also testified that she had identified the defendant at his probable cause hearing approximately three to four weeks after the shooting, and that, before the night of the shooting, she had seen Darrell Weaver many times but she had never seen the defendant.

The defendant argues that the judge violated his constitutional rights to a fair trial, to the presumption of innocence, and to equal protection of the laws, by allowing the testimony about the photographic identification at the hospital. He argues that identification was not a live issue at trial, and that, therefore, there was no justification for admitting evidence showing that the police had a photograph of the defendant although they had not yet arrested him for the crime under investigation. The defendant contends that that evidence served no valid probative purpose, but that it greatly prejudiced the defendant by informing the jury that the defendant had had prior trouble with the police.

The defendant's argument might be sound if, as he argues, identification of the assailant was not a live issue at trial. But the assailant's identity was a live issue at trial. Compare *Commonwealth* v. *Barrett*, 386 Mass. 649, 651-654 (1982), relied

on by the defendant, in which, because the victim knew his assailant before the incident occurred, identification was not an issue at trial. In this case, in response to the judge's inquiry whether defense counsel wanted the judge to instruct the jury on identification, counsel said, "I'm not going to concede and stipulate that the Commonwealth doesn't have to prove the identity of the perpetrator of the incident. They have to convince the jury beyond a reasonable doubt. . . . I'm talking about the basic element of the offense. The Commonwealth must prove that it was Tyrone Weaver that did the shooting." As defense counsel pointed out to the jury at great length in her cross-examination of Marquetta Owens, in the nine months between the shooting and the trial, Marquetta spoke about the incident on numerous occasions with other witnesses, with Detective Curran, and with the prosecutor. Furthermore, Marquetta was present in court when other witnesses testified at the defendant's probable cause hearing. Those circumstances would support a jury argument by the defendant that Marquetta Owens's in-court identification was the product of suggestion occurring after the shooting. Therefore, the Commonwealth was entitled to bolster Marquetta Owens's credibility by introducing evidence of her photographic identification of the defendant and his brother promptly after the shooting. "An identification made in court frequently has little testimonial value as compared with a prior identification . . . ." *Commonwealth* v. *Locke*, 335 Mass. 106, 112 (1956). *Commonwealth* v. *Nassar*, 351 Mass. 37, 42 (1966).

2. *Prior Inconsistent Statement.* On direct examination, Marquetta Owens testified that, before the defendant shot her brother, the defendant had said, "Fuck all this talking." On cross-examination, Marquetta conceded that she had told the police that, before the shooting, Darrell Weaver had told the defendant to stop the talking. She insisted, however, that, despite what she had told the police, the defendant, not Darrell Weaver, had spoken about stopping the talking.

Later in the trial, on cross-examination by defense counsel, Detective Curran confirmed that, at the hospital after the shooting, Marquetta Owens had told him that Darrell Weaver, not the

defendant, had said, "Let's stop the talking." At the request of Darrell Weaver's counsel, and over the defendant's objection, the judge instructed the jury just before that testimony by Detective Curran that they could consider Marquetta's prior inconsistent statement to Curran solely for their "evaluation of [Marquetta's] present testimony in court." During his instructions to the jury before their deliberations, the judge repeated that the jury could consider the prior statement solely for impeachment purposes, not for the truth of the matter asserted.

The defendant argues that, by giving that instruction, the judge "severely prejudiced the defendant's case" and "prevented [the defendant] from presenting a full defense in violation of his Sixth Amendment rights and his rights under art. 12 [of the Massachusetts Declaration of Rights]." We disagree.

"The settled rule in this Commonwealth is . . . that prior inconsistent statements, though admissible for the limited purpose of impeaching the credibility of a witness's testimony at trial, are inadmissible hearsay when offered to establish the truth of the matters asserted." *Commonwealth v. Daye*, 393 Mass. 55, 66 (1984), and cases cited. In *Daye, supra*, we recognized a limited exception to that rule. We held that, under certain conditions, prior inconsistent statements made under oath before a grand jury are admissible to prove the truth of the statements. *Id.* at 75. The defendant asserts that his constitutional rights "to due process, to present a defense, and to equal protection," require us to recognize another exception to the settled rule and to hold admissible for its truth Marquetta's prior inconsistent statement, even though not made under oath before a grand jury. We are not persuaded by the defendant's argument. We are unwilling to create another exception to the rule that would admit for their truth statements made in circumstances lacking the "atmosphere of formality" which exists in grand jury proceedings. See *Commonwealth v. Daye, supra* at 72.

3. *Manslaughter Instructions*. The defendant argues that the judge committed reversible error by: (a) refusing to instruct the jury that "a single blow could be sufficient provocation if in fact it created the sudden transport of passion;" (b) refusing to

instruct the jury that "[s]udden combat is readily understood to be one of the events which may provoke the disturbance of the mind that can end in a killing without malice"; and (c) inadequately dealing in his jury instructions with the concept of "cooling off." At trial, the Commonwealth agreed with the judge that the evidence warranted manslaughter instructions, but, on appeal, the Commonwealth argues that no manslaughter instructions were required. We need not address the issue because, in any event, there was no error in the manslaughter instructions given.

Although, as the defendant points out, a single blow can constitute adequate provocation to reduce a homicide from murder to manslaughter (see, e.g., *Commonwealth* v. *Baker*, 346 Mass. 107, 118-119 [1963]), as can sudden combat (see, e.g., *Commonwealth* v. *Peters*, 372 Mass. 319, 324 [1977]), the judge did not err by refusing to give the requested instructions. The judge defined adequate provocation as that provocation "likely to produce that state of passion, anger, fear, fright or excitement as might lead to an intentional homicide and does in fact actually produce that state of mind in the defendant." Compare *Commonwealth* v. *Rooney*, 365 Mass. 484, 494 (1974). He told the jury that "mere insulting words and threatening gestures alone, with nothing else, are not an adequate provocation to reduce a killing from murder to manslaughter." Furthermore, just before sending the jury out to deliberate, in response to defense counsel's objections to his charge, the judge instructed the jury that manslaughter "involves sudden transport of passion or heat of blood upon reasonable provocation." Those instructions satisfactorily conveyed to the jury the meaning of adequate provocation. The judge did not have to enumerate specific acts that could constitute such provocation nor was he required to adopt the precise language requested by the defendant. Nor did the judge prejudice the defendant by stating in his charge that "[i]f a person is assailed, attacked with great violence," that could constitute adequate provocation, or by stating that a killing "in the heat of passion which is sudden and occasioned by an unreasonable and great provocation," is manslaughter. The defendant objects

to the judge's use of the adjective "great" to modify the words "violence" and "provocation" but we are content that, examining the charge as a whole, see *Commonwealth* v. *Gibson*, 368 Mass. 518, 527-528 (1975), the judge properly explained to the jury the concept of provocation.

We also conclude that the judge adequately instructed the jury on the concept of "cooling off" as it relates to manslaughter. The defendant argues that the judge did not adequately explain to the jury that one "could go away and still be angry" and that the judge failed to inform the jury that they "must find beyond a reasonable doubt that there was time sufficient for cooling off."

The judge instructed the jury: "On the issue of manslaughter, whether the killing is done in the heat of passion — the killing does not have to be done spontaneously with the provocation in order to be done in the heat of passion. It doesn't have to be spontaneously with the provocation in order to be done in the heat of passion. As I told you, where there's evidence of provocation, the Commonwealth has the burden of proving beyond a reasonable doubt the defendant did not act in the heat of passion." That language satisfactorily conveyed to the jury the necessary concepts.

4. *Credibility Instructions.* The defendant argues that the judge violated the defendant's rights to a fair trial, to due process of law, and to equal protection, by refusing to instruct the jury: "On judging and weighing the credibility of a witness you may draw a negative inference from the witness's failure to come forward with his or her version of the events in a reasonably prompt manner in the circumstances." There was no error. The judge fully and fairly instructed the jury on the factors they could consider in assessing the credibility of witnesses. He was not required to single out a part of the evidence for special attention. *Collins* v. *Baron*, 392 Mass. 565, 567 (1984). Furthermore, of the seven witnesses called by the prosecution, most had spoken to the police within twenty-four hours of the shooting. The defendant had full opportunity to cross-examine each witness about his or her failure to come forward promptly, and to argue to the jury inferences from that failure.

5. *Conclusion.* Having reviewed the entire record as required by G. L. c. 278, § 33E (1984 ed.), we decline to order a new trial or to direct the entry of a verdict of a lesser degree of guilt. Nothing in the record suggests that the defendant's conviction of murder in the first degree was inappropriate.

*Judgments affirmed.*