**William H. DOUCETTE, Jr.,**
**Petitioner, Appellant,**

v.

**George VOSE, Respondent, Appellee.**

**No. 87–1413.**

United States Court of Appeals,
First Circuit.

Heard Dec. 12, 1987.
Decided March 23, 1988.

Edward Berkin with whom Kehoe, Doyle, Playter & Novick, Boston, Mass., was on brief, for petitioner, appellant.

Paula J. DeGiacomo, Asst. Atty. Gen., Crim. Bureau, with whom James M. Shannon, Atty. Gen., Boston, Mass., was on brief, for respondent, appellee.

Before BREYER and SELYA, Circuit Judges, and LAFFITTE,* District Judge.

BREYER, Circuit Judge.

In 1979, a Massachusetts jury convicted appellant William Doucette of first degree murder. After exhausting state remedies, he filed a habeas corpus petition in federal district court, 28 U.S.C. § 2254 (1982). He claims that his conviction violated the United States Constitution primarily because the trial judge told the jury:

When the killing is caused by the intentional use of a deadly weapon, such as a knife, there arises a presumption that the killing was with malice aforethought.

In appellant's view, this instruction (combined with several others) impermissibly shifted the burden of disproving malice aforethought to the defendant. *Francis v. Franklin,* 471 U.S. 307, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985); *Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979). The federal district court denied appellant's petition. We agree with the district court that federal law does not entitle appellant to issuance of the writ.

## I

■ Massachusetts has a "contemporaneous objection" rule. *Commonwealth v. Fluker,* 377 Mass. 123, 131, 385 N.E.2d 256 (1979) (failure to object specifically to trial deficiency "precludes appellate review"); *see also McLaughlin v. Gabriel,* 726 F.2d 7, 8 (1st Cir.1984) (in Massachusetts, "defendant normally cannot challenge an allegedly defective charge unless he has objected to the specific instruction at trial"). Petitioner did not object to the giving of this instruction at trial. Thus, we can consider his claim of constitutional error only if the Commonwealth has waived its reliance on this "adequate and independent state ground" for affirming his conviction. *Wainright v. Sykes,* 433 U.S. 72, 86–87, 97 S.Ct. 2497, 2506–2507, 53 L.Ed.2d 594 (1977); *Puleio v. Vose,* 830 F.2d 1197, 1199–1200 (1st Cir.1987), *petition for cert. filed* (Jan. 23, 1988).

■ We normally find a waiver of this state ground where the state courts, after reviewing a conviction, affirm it, not on the basis of the "contemporaneous objection rule," but on the basis of their own analysis of federal law. *Puleio,* 830 F.2d at 1200 (waiver only occurs if court reaches "gist of the *federal constitutional question* ") (emphasis in original); *McCown v. Callahan,* 726 F.2d 1, 3 (1st Cir.) (waiver if Supreme Judicial Court conducts "detailed examination of federal law and federal cases ... necessary to decide a specific question of federal law"), *cert. denied,* 469 U.S. 839, 105 S.Ct. 139, 83 L.Ed.2d 78 (1984); *Gibson v. Butterworth,* 693 F.2d 16, 17–18 (1st Cir.1982) (evidence of waiver depends on whether examination of merits went to federal or state question). Sometimes it is difficult to determine whether or not the state courts have relied on the "contemporaneous objection rule," or on their view of federal law, particularly where, as here, the state Supreme Judicial Court exercised its special statutory power to review verdicts in capital cases, Mass. Gen.Laws ch. 278, § 33E (1986), in order to determine whether there was a "substantial risk of a miscarriage of justice." *Commonwealth v. Ely,* 388 Mass. 69, 73–74, 444 N.E.2d 1276 (1983); *see also Commonwealth v. Parker,* 389 Mass. 27, 30, 33, 449 N.E.2d 316 (1983); *Commonwealth v. Tavares,* 385 Mass. 140, 148, 430 N.E.2d 1198, *cert. denied,* 457 U.S. 1137, 102 S.Ct. 2967, 73 L.Ed.2d 1356 (1982). This special discretionary review, in a sense, always overlooks a failure to raise an objection at trial, but it does so only in the context of applying a specially stringent standard of review. We have held that the mere fact that the Supreme Judicial Court engages in such review does not automatically waive (for federal habeas purposes) its "adequate state ground." *Puleio,* 830 F.2d at 1200;

* Of the District of Puerto Rico, sitting by designation.

*McCown*, 726 F.2d at 3–4; *McLaughlin*, 726 F.2d at 9; *Gibson*, 693 F.2d at 17 (miscarriage of justice review is "at most a 'limited relaxation' of the state's contemporaneous objection rule, insufficient to preclude the application of *Wainwright*" (quoting *Zeigler v. Callahan*, 659 F.2d 254, 271 n. 11 (1st Cir.1981))). Nonetheless, if, in the course of such review, the Supreme Judicial Court makes reasonably clear that its reasons for affirming a conviction rest upon its view of federal law, we will find a waiver. *McCown*, 726 F.2d at 4 ("*Gibson* insists upon a fairly clear showing that the state waived its procedural objection"). And, that is the case here. In our view, the Supreme Judicial Court reached, and decided, the federal issue.

Because it may be useful for the reader to see the kind of state court discussion that will lead us to find a waiver, and because the discussion clearly explains the federal law issue as of the time the Supreme Judicial Court wrote its decision, we set forth that discussion:

> The defendant contends that the judge's instructions on malice and intent created a mandatory presumption in favor of guilt. Alternatively, he argues that these instructions impermissibly shifted the burden of disproving malice aforethought to the defendant. *See Sandstrom v. Montana*, 442 U.S. 510, 524, 99 S.Ct. 2450, 2459 [61 L.Ed.2d 39] (1979).... We agree that the judge's use of the word "presumption" was incorrect and certainly regrettable. *Commonwealth v. Repoza*, 382 Mass. 119, 132, 414 N.E.2d 591 (1980). *Commonwealth v. Medina*, 380 Mass. 565, 577, 404 N.E.2d 1228 (1980).... However, in the final analysis, "whether a defendant had been accorded his constitutional rights depends upon the way in which a reasonable juror could have interpreted the instruction." *Sandstrom v. Montana, supra*, 442 U.S. at 514, 99 S.Ct. at 2454. Therefore, we have upheld the use of the word "presumption" in malice instructions where the language of the charge taken as a whole, "effectively negates any burden-shifting" and when it is clear that the presumption is not

mandatory. *Commonwealth v. Richards, supra*, 384 Mass. [396] at [403], [Mass.Adv.Sh. (1981) 1967] at 1974, 425 N.E.2d 305.

> "The fact that on [one occasion] the judge lapsed into the use of the word 'presumption' when he obviously meant 'inference' [does] not detract from the otherwise thorough, accurate, and precise instructions on [malice]." *Commonwealth v. McInerney*, 373 Mass. 136, 150, 365 N.E.2d 815 (1977). The judge repeatedly charged the jury that the Commonwealth had to prove the case against the defendant and each element of the offense beyond a reasonable doubt. The charge defining reasonable doubt was correctly stated. The judge also correctly instructed on the presumption of innocence and that all presumptions of law independent of evidence are in favor of innocence. Listening to the charge as a whole, the jury would not understand the quoted language as creating a mandatory presumption of malice or as shifting to the defendant the burden of disproving malice.

> Moreover, we see no merit in the defendant's contention that the finding language and the intent charge added to the likelihood that the jurors believed the defendant had to disprove malice. The "finding" language did not impose any burden on the defendant to introduce evidence to rebut malice aforethought. This factor, in light of the judge's charge to the jury that the "law never imposes upon a defendant in a criminal case the burden or duty of calling any witnesses or producing any evidence," leads us to conclude that the judge's charge in this respect was free of reversible error. Also, the charge concerning intent was correct. *Sandstrom v. Montana, supra*, 442 U.S. at 515, 99 S.Ct. at 2454, does not invalidate the use of an entirely permissive inference or presumption which allows the trier of fact to infer the elemental fact from proof by the prosecutor of the basic one, and which places no burden of any kind on the defendant. *See*

*Commonwealth v. Ely,* 388 Mass. 69, 76, 444 N.E.2d 1276 (1983).

*Commonwealth v. Doucette,* 391 Mass. 443, 450–52, 462 N.E.2d 1084 (1984) (footnotes and certain citations omitted).

Although state cases are cited in this discussion, it is *Sandstrom,* the federal case, that is primarily at issue. *See Jackson v. Amaral,* 729 F.2d 41, 44–45 (1st Cir.1984) (greater the reliance on federal cases, greater the likelihood that court will find waiver); *McCown,* 726 F.2d at 3–4 (same). Thus, we must reach the merits of the petitioner's constitutional claim.

## II

■ Appellant concedes that his trial failed to meet the Constitution's requirements only if the trial court's erroneous instruction might have affected the jury. But, he points out that since the Supreme Judicial Court wrote its decision, the Supreme Court of the United States has clarified the strictness of the test that courts must apply to burden-shifting instructions. In *Francis v. Franklin, supra,* the Court warned against too ready a judicial willingness to find that a constitutionally erroneous presumption instruction had no effect upon the jury. Rather, it said, "when there exists a *reasonable possibility* that the jury relied on an unconstitutional understanding of the law in reaching a guilty verdict, that verdict must be set aside." *Id.,* 471 U.S. at 323 n. 8, 105 S.Ct. at 1976 n. 8 (emphasis added).

In light of *Francis,* we have reexamined the transcript of petitioner's trial. Having done so, we conclude that the Supreme Judicial Court's determination is still correct. In addition to the reasons the Supreme Judicial Court gave for concluding that the jury did not rely upon the faulty instruction, the record reveals another ground which, when added to those of the Supreme Judicial Court, convinces us that there is no "reasonable possibility" that the jury relied on the faulty instruction in reaching its verdict.

To understand this further ground, one must bear in mind that the trial record (the opening statements, appellant's testimony, the closing arguments) indicates that the jury's verdict depended upon which of two competing versions of the relevant events the jury believed. Appellant said that on the evening of the murder he had left a bar in Boston. He was under the influence of alcohol and Seconal, and wanted to find a taxi to get home. The victim picked appellant up on a Boston street. Instead of taking him home, the victim checked into a motel with him; and he became conscious in bed with the victim on top of him making homosexual advances. Horrified, he stabbed the victim, wounding him slightly. He tried to telephone the police. The victim then attacked him, backing him into a corner. He stabbed the victim again, got away, started to run down the stairs; the victim tried to tackle him, but he escaped, eventually ending up, upset, confused, and in the hands of the police. Appellant's basic legal claim, made repeatedly at trial, was 'self-defense.'

The prosecution painted a very different picture. On the basis of blood stains, torn clothes, semen found in parts of the *victim's* body, the appellant's statements to various witnesses, and other evidence, the Commonwealth argued that the appellant needed money; he picked up the victim, took him to a motel and had sexual relations with him; he possibly tried to obtain money from the victim, who refused. They argued, and appellant stabbed at the victim, wounding him slightly, and wiped the knife on the bedspread. The victim went into the bathroom to clean up. Perhaps after an interchange of insults or other words, the appellant decided to kill the victim. The victim tried to telephone the police. The appellant stabbed him several times and slit his throat.

The jury was thus presented with two very distinct versions of the events. The prosecutor repeatedly argued to the jury that the killing was premeditated. He said that the appellant calculatedly decided to kill the victim sometime during the pause after the initial stab wound. If the jury believed that the evidence supported this version of events (or something like them), it would, in all likelihood, find appellant

guilty of first degree murder. On the other hand, the defense emphasized that the appellant acted in self-defense. If the jury believed the appellant, it would, in all likelihood acquit him or, at most, find him guilty of manslaughter.

Though our summary leaves out many important items of evidence, it is sufficient for the reader to understand the background against which the judge instructed the jury as follows as to their alternatives:

(1) If the jury believed the appellant acted in self-defense, they should acquit him. The judge did not simply rely on his general charge that the Commonwealth had to prove all elements of the crime. *See* Mass. Gen.Laws ch. 265, § 1 (1986); *Commonwealth v. Harrington*, 379 Mass. 446, 452, 399 N.E.2d 475 (1980). Rather, the judge added (after having given the erroneous malice instruction):

It is further upon the Commonwealth to prove to you before you get to some of those other elements, that the defendant did not act in self-defense, that his actions were not justified, not reasonable, ... beyond a reasonable doubt.

*See id.* (burden of proof on Commonwealth to negate defenses raised by defendant).

(2) If the jury found that the Commonwealth proved beyond a reasonable doubt that the defendant did not act in self-defense, and if the jury found that "there was an intentional killing," then that killing amounted to "manslaughter" provided that the killing was "done under the influence of, or as a result of, passion, anger, fear, fright, or nervous excitement" provoked by events likely to produce that state in an ordinary man. *See* Mass.Gen.Laws ch. 265, § 13 (1986); *Commonwealth v. Weaver*, 395 Mass. 307, 312, 479 N.E.2d 682, 686 (1985); *Commonwealth v. Zukoski*, 370 Mass. 23, 28, 345 N.E.2d 690 (1976).

(3) If the Commonwealth proved an intentional killing and the jury found lack of justification which amounted to "malice" (as *wrongly* described by the judge, *see supra* p. 539), the jury could find murder in the first or second degree. But, to find murder in the first degree, it had to find either (a) deliberate premeditation, or (b) extreme or atrocious cruelty. The court said that "[d]eliberate premeditation means that the person intended not only to kill unlawfully, but in pursuance of a purpose which has been formed previously to putting it into execution. The intention to kill must precede the act done. The intention to kill must precede the act done, for some period of time is essential [sic]." The court's instructions made perfectly clear that the Commonwealth had the burden of proving deliberate premeditation.

Under these instructions, the jury found appellant guilty of first degree murder. Given the way the case was argued at trial, that verdict means that the jury almost certainly found "deliberate premeditation," and that finding makes it almost inconceivable that the jury could have relied upon the erroneous malice instruction. First, a jury that finds a killing deliberately premeditated (under proper "deliberate premeditation" instructions) is not a jury that could find manslaughter, regardless of what it thought about "malice." "Deliberate premeditation" is inconsistent with a killing that results from "passion, anger, fear, fright, or nervous excitement." *United States v. Frady*, 456 U.S. 152, 174, 102 S.Ct. 1584, 1597, 71 L.Ed.2d 816 (1982) ("Plainly, a rational jury that believed Frady had formed a 'plan to kill ... a positive design to kill' with 'reflection and consideration amounting to deliberation,' could not also have believed that he acted in 'sudden passion ... aroused by adequate provocation ... causing him to lose his self-control.' "); *see also United States v. Collins*, 690 F.2d 431, 437–38 (5th Cir.1982) (evidence of deliberation inconsistent with passion or provocation necessary to merit manslaughter instruction), *cert. denied*, 460 U.S. 1046, 103 S.Ct. 1447, 75 L.Ed.2d 801 (1983).

Of course, a jury could find "deliberate premeditation" and also find self-defense. One could deliberately, if briefly, premeditate a justified killing. But, the jury *rejected* the possibility of a justified killing following instructions *uncontaminated* by the faulty malice definition: the instructions on self-defense were explicit in re-

spect to the Commonwealth's burden; they followed the erroneous malice instruction and would have cured any lingering misimpression; they were clear and complete, telling the jury to move on to murder and manslaughter only if they found that the Commonwealth had proved no self-defense.

Thus, if one looks at the practicalities of the trial, there seems no "reasonable possibility" that the malice instruction played any role, for the practical question was simply which version of events the jury accepted. Alternatively, if, following *Francis*'s admonition to assume "that jurors carefully follow instructions," *Francis*, 471 U.S. at 325 n. 9, 105 S.Ct. at 1976 n. 9, one looks at the logic of the "deliberate premeditation" finding, again there seems virtually no likelihood that the malice instruction could have made a difference. In a sense, the larger finding swallows the smaller: if a jury finds deliberate premeditation leading to "an intention to kill with no legal justification," it is almost inconceivable that it could "presume" the intention thereby formed. *See Fryer v. Nix*, 775 F.2d 979, 991 (8th Cir.1985) (no actual prejudice where jury found not only malice but premeditation); *United States v. Green*, 424 F.2d 912, 913 (D.C.Cir.1970) ("Green II") ("inconceivable" that jury finding premeditation did not find malice), *cert. denied*, 400 U.S. 997, 91 S.Ct. 473, 27 L.Ed.2d 447 (1971); *Belton v. United States*, 382 F.2d 150, 155 (D.C.Cir.1967) (jury that inferred premeditation and deliberation "could hardly have failed" to infer malice). *But see Green v. United States*, 405 F.2d 1368, 1370 (D.C.Cir.1968) ("Green I") (where accompanied by other incorrect instructions, identification of "wrongful act intentionally done" with "malice" improperly removed possibility of finding manslaughter from jury). In sum, given the facts of this case, the set of instructions given at trial, and the logic of the jury finding, there is no "reasonable possibility" that the improper instructions allowed the jury to find a first degree murder without finding "an intentional killing without legal justification"—or malice.

## III

One final point: Appellant also claims that his counsel's failure to request instructions about intoxication (potentially lowering the offense to second degree murder) rendered counsel's assistance constitutionally "ineffective." Again, however, we agree with the Supreme Judicial Court: Given the strength of the evidence that appellant was lucid at the relevant times and counsel's reasonable decision to base his case on self-defense, counsel might reasonably have decided against requesting an apparently conflicting instruction as a matter of trial strategy. Doing so violated no constitutional norm. *See Strickland v. Washington*, 466 U.S. 668, 690, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674 (1984) ("strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable"); *Perron v. Perrin*, 742 F.2d 669, 673 (1st Cir.1984) (declining to "second-guess tactical decisions ... unless they are unreasonable"); *compare Dufresne v. Moran*, 729 F.2d 18, 22–23 (1st Cir.1984) (representation not "reasonably competent" where counsel actually failed to recognize intoxication as a possible defense, but error not prejudicial).

The judgment of the district court is

*Affirmed.*

SELYA, Circuit Judge (concurring).

I write separately because, in my view, the Massachusetts Supreme Judicial Court (SJC) did not waive petitioner's procedural default. Accordingly, inasmuch as Doucette has been unable to demonstrate either "cause" or "prejudice", a federal court sitting in habeas jurisdiction is barred from considering his claimed *Sandstrom* error. *See Wainwright v. Sykes*, 433 U.S. 72, 86–87, 97 S.Ct. 2497, 2506–07, 53 L.Ed.2d 594 (1977); *Puleio v. Vose*, 830 F.2d 1197, 1199 (1st Cir.1987), *petition for cert. filed* (Jan. 23, 1988).

My disagreement with the majority is less one of principle than of application. I am in substantial agreement with the majority's overall methodology for ascertaining whether or not "waiver" has tran-

spired. *See ante* at 539–540. But my use of essentially the same divining rod leads me to an opposite conclusion.

It is evident to me that, despite the passing references to *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979), the SJC's consideration of the alleged instructional error in Doucette's case "went not to the *federal* question of ... constitutional sufficiency, but to the *state* law question of whether a 'substantial risk of a miscarriage of justice' was present." *Gibson v. Butterworth*, 693 F.2d 16, 17 (1st Cir.1982) (emphasis in original). I say this based not only on my own reading of the case, but based upon no less an authority than the SJC itself, which phrased the issue before it as the need to "determine whether the alleged errors create a substantial risk of a miscarriage of justice." *Commonwealth v. Doucette*, 391 Mass. 443, 450, 462 N.E.2d 1084 (1984). Where, as here, a state tribunal tells us that it purports to answer a state law question in state law terms, we should be loath to shrug off that statement without compelling reasons.

Moreover, the other straws in the wind signal that the SJC was faithful to its announced intention of deciding this point as one of state law. It explicitly refused to overlook the absence of any contemporaneous objection, *id.*, but treated the same, *as state law dictated*, as "relevant" to the section 33E miscarriage inquiry. *Id.* (citing *Commonwealth v. Tavares*, 385 Mass. 140, 148, 430 N.E.2d 1198, *cert. denied*, 457 U.S. 1137, 102 S.Ct. 2967, 73 L.Ed.2d 1356 (1982)). It cited, and relied upon, mainly Massachusetts cases in its discussion of the point. *Commonwealth v. Doucette*, 391 Mass. at 450–52, 462 N.E.2d 1084. Moreover, in passing upon the question, the SJC addressed a number of considerations unrelated to the constitutional question. For instance, the SJC considered the "interests of justice," *Commonwealth v. Doucette*, 391 Mass. at 460, 462 N.E.2d 1084, and the gravity of the instructional defects in their ensemble. *Id.* at 450, 462 N.E.2d 1084; *id.* at 458, 462 N.E.2d 1084 ("taken as a whole the judge's instructions were adequate and did not create a substantial risk of a mis-

carriage of justice"). These were matters wholly impertinent to a *federal law* inquiry, but necessary to a *state law* inquiry. *See, e.g., Commonwealth v. Grace*, 381 Mass. 753, 758, 412 N.E.2d 354 (1980) (discussing factors relevant to section 33E review).

In short, as the majority concedes, "[n]ot every passing reference to substance dispels the onus of noncompliance with a contemporaneous objection rule." *Puleio v. Vose*, 830 F.2d at 1200. We have "repeatedly held ... that SJC review under the discretionary state miscarriage of justice standard will not suffice, in and of itself, to bypass the Commonwealth's contemporaneous objection rule." *Id.* See also *McCown v. Callahan*, 726 F.2d 1, 3 (1st Cir.), *cert. denied*, 469 U.S. 839, 105 S.Ct. 139, 83 L.Ed.2d 78 (1984); *Gibson v. Butterworth*, 693 F.2d at 17. There are, in my judgment, insufficient incremental considerations here to warrant us in concluding that the SJC, contrary to what it has plainly suggested, reached the gist of the federal constitutional question.

In the end, I join unshrinkingly in the result reached by the majority, for I think that Judge Breyer's erudite discussion of the substantive law, *ante* at 541–544, is punctiliously correct. But it was unnecessary for the panel, I believe, to reach the matters discussed in Part II of the majority opinion. If we are to continue "to accord appropriate respect to the sovereignty of the states in our federal system," *Ulster County Court v. Allen*, 442 U.S. 140, 154, 99 S.Ct. 2213, 2223, 60 L.Ed.2d 777 (1979), then we must refrain from overreaching to find a waiver upon so tenebrous a showing.