Albert F. **MOORE**, Jr., Petitioner,

v.

Joseph **PONTE**, Respondent.

No. 98–1292.

United States Court of Appeals,
First Circuit.

Heard March 2, 1999.

Decided Aug. 2, 1999.

John H. LaChance, by appointment of the Court, with whom Victoria L. Nadel, was on brief, for petitioner.

Gregory I. Massing, Assistant Attorney General, Criminal Bureau, Appellate Division, with whom Scott Harshbarger, Attorney General, was on brief, for respondent.

Before STAHL, Circuit Judge, MAGILL,* Senior Circuit Judge, and LIPEZ, Circuit Judge.

MAGILL, Senior Circuit Judge.

A Massachusetts jury convicted Albert Moore, Jr. of first degree murder on June 18, 1976. The Essex Superior Court sentenced Moore to life imprisonment without parole. On direct appeal, the Supreme Judicial Court of Massachusetts (SJC) affirmed Moore's conviction. *See Commonwealth v. Moore* (*Moore I* ), 379 Mass. 106, 393 N.E.2d 904 (Mass.1979). In 1988, Moore filed a motion for new trial in state court, alleging that he was denied due process by being forced to sit in a prisoner's dock during trial and that the trial court gave erroneous instructions to the jury on the malice element of first degree murder and the reasonable doubt standard. The court denied Moore's motion for new trial, and the SJC denied Moore's motion for leave to appeal. Moore subsequently filed a petition for writ of habeas corpus in federal district court pursuant to 28 U.S.C. § 2254, which the district court denied. We affirm.

* Of the Eighth Circuit, sitting by designation.

## I. Background

We briefly review the facts adduced at trial concerning the killing of Donald Rimer. A more thorough review of this evidence may be found in the district court's opinion below. *See Moore v. Ponte* (*Moore II* ), 924 F.Supp. 1281, 1292–93 (D.Mass. 1996).

Donald Rimer was the co-owner and construction supervisor of a project on which Albert Moore, Jr. served as foreman. The evidence at trial showed that Moore disliked Rimer, made numerous derogatory statements about him, and told a friend that he intended to kill him. In the early morning hours of April 14, 1972, Moore told a friend that he was going to kill Rimer and asked to borrow a lug wrench. Moore showed the friend a gun and a key to Rimer's townhouse.

The evidence at trial also showed that Moore went to Rimer's townhouse later that morning and struck Rimer in the head several times with a blunt object while he was sleeping. Five witnesses testified that Moore admitted to them that he had killed Rimer. In addition, police introduced numerous pieces of evidence that linked Moore to the crime.

Moore was indicted for Rimer's murder in January 1976 and was tried before a jury in Essex Superior Court. Before trial commenced, Moore's counsel asked the court if Moore could sit at counsel's table instead of being placed in the prisoner's dock. The SJC described the prisoner's dock as follows:

> Most court rooms used for criminal sessions in the Commonwealth are equipped with a dock, a wooden enclosure, usually measuring four or five feet square, in which it has long been customary for the defendant to sit during trial. The dock is open at the top, so that the upper torso of a seated person is visible. The judge, the court clerk, court officers and the jury occupy similar enclosures, the arrangement of which

varies from court room to court room. The dock as we know it appears to be a vestige of the English baledock....

*Moore I*, 393 N.E.2d at 906–07. Moore's counsel stated that he knew of no basis in law for his request, but said that he was bothered by the dock's potential effect on the jury. The judge stated that he would confer with the Sheriff and that counsel's request would depend on security. *See id.* at 906. The court subsequently denied Moore's request, and Moore sat in the dock throughout trial.

At the close of all evidence, the court instructed the jury on the reasonable doubt standard and the malice element of first degree murder. The instructions on reasonable doubt equated reasonable doubt as doubt for which a good reason could be given, equated reasonable doubt with moral certainty, stated that one is morally certain when he would act on his conviction in matters of the highest importance in his daily affairs, and emphasized that the government's burden of proof was not absolute and warned against applying too high a standard. In its instructions on the malice element, the trial court told the jury that it could presume satisfaction of the malice element if the Commonwealth established that the killing was done without excuse or justification. Moore did not object to these jury instructions at trial.

The jury ultimately found Moore guilty of murder in the first degree, and the court sentenced him to life imprisonment without parole. Moore appealed his conviction to the SJC, challenging, *inter alia,* his placement in the prisoner's dock. Moore did not challenge the jury instructions on reasonable doubt or malice in his direct appeal. The SJC affirmed Moore's conviction. *See id.* at 911.

On October 5, 1989, Moore filed a motion for new trial in state court alleging ten trial court errors. Three claims raised in the motion that are relevant to this appeal include: (1) the trial court violated Moore's due process rights by compelling him to sit in the prisoner's dock throughout trial; (2) the jury instructions on the reasonable doubt standard did not properly inform the jury of the Commonwealth's high burden of proving the defendant's guilt; and (3) the jury instructions on malice violated due process by not requiring the Commonwealth to prove this element of the offense. On January 4, 1990, the state trial judge summarily denied Moore's motion for new trial, finding that most of his claims had been previously advanced or were known but not raised in earlier proceedings. The court also stated that Moore's claims appeared to lack merit. In June 1990 Moore requested leave to appeal the decision to the SJC, pursuant to Chapter 278, § 33E of the Massachusetts General Laws. A single justice of the SJC, acting as a "gatekeeper,"[1] denied Moore's request on the grounds that the issues raised in the motion were not new or substantial.

On February 6, 1991, Moore filed a petition for writ of habeas corpus in federal district court raising the same ten trial errors alleged in his motion for new trial before the Massachusetts courts.[2] The district court initially dismissed all of Moore's claims, except for his prisoner's dock claim, finding that they were procedurally barred by adequate and independent state procedural grounds. In particular, the court held that the SJC gatekeeper's denial of leave to appeal because the issues raised were not new or

---

1. The "gatekeeper" justice considers whether to grant a defendant's motion for leave to appeal from an order denying a request for a new trial. The gatekeeper justice may allow an appeal if it presents a "new and substantial question which ought to be determined by the full court." *Mass. Gen. Laws* ch. 278, § 33E.

2. Because Moore filed his petition for writ of habeas corpus before the Antiterrorism and Effective Death Penalty Act (AEDPA) became effective on April 24, 1996, the AEDPA does not apply to this case and Moore is entitled to de novo review of his constitutional claims. *See Curtis v. Duval,* 124 F.3d 1, 3–4 (1st Cir.1997).

substantial precluded federal review of the claims. The court appointed an attorney to represent Moore on his prisoner's dock claim, and the case was reassigned to another judge for consideration on the merits.

Moore's appointed counsel moved the court to reconsider the prior order dismissing the jury instructions claims on procedural grounds.[3] Moore argued that the SJC gatekeeper's denial of leave to appeal could not preclude federal review of his jury instructions claims. He further argued that the state courts' reliance on Moore's failure to contemporaneously object to the jury instructions could not prevent federal review because Massachusetts courts do not consistently apply that procedural rule. The district court agreed with Moore's arguments and proceeded to analyze Moore's jury instructions claims on the merits. *See Moore II*, 924 F.Supp. at 1295–98.

On the merits, the district court assumed that the trial court's use of the prisoner's dock and its instructions on malice violated due process, but concluded that both errors were harmless. *See id.* at 1291–97. In a subsequent order, the court also dismissed Moore's challenge to the jury instructions on reasonable doubt, finding that they were constitutionally sufficient. Moore now appeals from the district court's denial of his petition for writ of habeas corpus.

## II. Jury Instructions

■ Before turning to the merits of Moore's appeal, we first consider the Commonwealth's argument that Moore's jury instructions claims are barred by adequate

and independent state procedural grounds.[4] The Commonwealth contends that the district court erred in holding that Massachusetts courts waive the contemporaneous objection requirement in cases involving challenges to jury instructions on reasonable doubt. The Commonwealth also argues that the district court erred in holding that the SJC gatekeeper's denial of Moore's request for leave to appeal did not bar federal consideration of Moore's challenge to the jury instructions on malice and reasonable doubt. We conclude that an adequate and independent procedural bar precludes federal review of the jury instructions on reasonable doubt, but conclude that no such bar exists for Moore's challenge to the instructions on malice.

### A. Applicable Law

■ When a state court decision rests on a state procedural rule that is independent of the federal question and adequate to support the judgment, a federal court may not review a question of federal law raised in a petition for writ of habeas corpus. *See Coleman v. Thompson*, 501 U.S. 722, 729, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). Considerations of federalism and comity generally prohibit a federal court from ignoring the state's legitimate interests in applying its adequate and independent procedural rules. *See id.* at 730–31, 111 S.Ct. at 2554–55.

■ "A defendant's failure to object in a timely manner at his state criminal trial may constitute an adequate and independent state ground sufficient to trigger the bar rule so long as the state has a consistently applied contemporaneous objection

3. Moore does not appeal from the district court's denial of relief on the other seven claims raised in his petition.

4. Moore asserts that the Commonwealth may not argue this issue in support of the judgment below because the Commonwealth did not file a notice of appeal. We disagree because "defendants[, without cross-appealing,] remain free to defend the judgment below on grounds not accepted by the lower court."

*Martin v. Tango's Restaurant, Inc.*, 969 F.2d 1319, 1325 (1st Cir.1992) (citing *United States v. American Ry. Express*, 265 U.S. 425, 435–36, 44 S.Ct. 560, 68 L.Ed. 1087 (1924)); *see also Carey v. Bahama Cruise Lines*, 864 F.2d 201, 203 n. 1 (1st Cir.1988) ("An appellee need not cross-appeal to argue that there are alternative grounds that support the judgment below." (internal quotation marks omitted)).

requirement and the state court has not waived it in the particular case by resting its decision on some other ground." *Burks v. Dubois*, 55 F.3d 712, 716 (1st Cir.1995).

■ However, even if a petitioner has procedurally defaulted a claim in state court, a federal court may reach the merits of his petition if he shows "cause and prejudice" or that the constitutional error probably resulted in the conviction of a person who is actually innocent. *See Simpson v. Matesanz*, 175 F.3d 200, 209 (1st Cir.1999).

**B. Jury Instructions on Reasonable Doubt**

■ Moore contends that neither the contemporaneous objection rule nor the SJC justice's denial of leave to appeal prevents federal review of his challenge to the jury instructions on reasonable doubt. We disagree because this court's recent decision in *Simpson* dictates that these rules impose a procedural bar that precludes federal review of this claim.

In *Simpson*, this court held that waiver of a challenge to jury instructions on reasonable doubt and an SJC gatekeeper's denial of leave to appeal impose an adequate and independent procedural bar which precludes federal review. *See id.* at 205–09. This court explicitly rejected the arguments Moore now makes regarding the Massachusetts courts' supposedly inconsistent application of this procedural bar in these types of challenges. *See id.* at 206–09. Because *Simpson* is dispositive of this issue, we now hold that the district court erred in concluding that Moore's challenge to the jury instructions on reasonable doubt was not barred by adequate and independent procedural grounds.

■ Notwithstanding this procedural default, Moore contends that he has shown cause for his default because the law regarding challenges to reasonable doubt

jury instructions had not developed until the Supreme Court's seminal opinions in the 1990s.[5] *See Victor v. Nebraska*, 511 U.S. 1, 114 S.Ct. 1239, 127 L.Ed.2d 583 (1994); *Cage v. Louisiana*, 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990) (per curiam). Moore is correct in recognizing that novel legal theories may provide grounds for finding cause for a procedural default, *see Reed v. Ross*, 468 U.S. 1, 16, 104 S.Ct. 2901, 82 L.Ed.2d 1 (1984), but the *Simpson* court recognized that claims like the ones raised in Moore's petition were available to counsel before 1975, and thus before Moore's trial and direct appeal. *See Simpson*, 175 F.3d at 210–15. Therefore, we conclude that Moore cannot show cause for his procedural default and hold that Moore's claim regarding the jury instructions on reasonable doubt may not be reviewed in this petition for writ of habeas corpus. Accordingly, we affirm the district court dismissal of this claim, albeit on different grounds.

**C. Jury Instructions on Malice**

The Commonwealth contends that the district court erred in ruling that the SJC gatekeeper's denial of Moore's motion for leave to appeal under § 33E does not impose a procedural bar that precludes our review of Moore's challenge to the jury instructions on malice. We disagree and hold that no procedural bar precludes federal consideration of this claim. On the merits, we find that the jury instructions on malice were constitutionally deficient, but conclude that the error was harmless.

**1. Procedural Bar**

■ As discussed above, a procedural rule may bar federal consideration of a claim in a habeas petition only if the state consistently applies that rule. *See Burks*, 55 F.3d at 716. In contrast to their treatment of challenges to jury instructions on reasonable doubt, Massachusetts courts

---

5. Moore does not argue that the actual innocence exception to the procedural default rule applies in this case. Our review of the record clearly suggests that Moore would not be entitled to application of this exception.

have chosen to waive the contemporaneous objection requirement when reviewing challenges to erroneous jury instructions on malice which were given before the Supreme Court announced its decision in *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979). *See, e.g., Commonwealth v. Sires*, 405 Mass. 598, 542 N.E.2d 580, 581 n. 2 (Mass.1989) ("The defendant did not object to the burden-shifting language at his trial. However, because the defendant's trial and direct appeal both occurred prior to the *Sandstrom* decision, he did not have a genuine opportunity to raise his constitutional claim on those occasions." (internal quotation marks and alterations omitted)); *see also Libby v. Duval*, 19 F.3d 733, 735 n. 5 (1st Cir.1994) ("[A]lthough petitioner did not object to the challenged instruction at the time it was given, Massachusetts has waived its contemporaneous objection rule in the *Sandstrom* error context where the error occurred prior to the *Sandstrom* decision."); *Commonwealth v. Adrey*, 397 Mass. 751, 493 N.E.2d 875, 877 (Mass. 1986) ("We have previously held that ... constitutional theories [regarding the impropriety of mandatory presumptions in jury instructions on malice] were not sufficiently developed for a defendant to be chargeable with knowledge about them until the Supreme Court's decision in [*Sandstrom* ]."). Because Massachusetts courts overlook the contemporaneous objection requirement in pre-*Sandstrom* cases, the state court's reliance on a procedural bar to preclude review of this issue constitutes an inconsistent application of its procedural rules and cannot prevent federal review of this claim. We, therefore, proceed to analyze the merits of Moore's claim of error.

## 2. Merits

■ Moore contends that the trial court's jury instructions on malice created

an improper mandatory presumption that violated his due process rights. The Commonwealth concedes that a portion of the jury instructions on malice contained an improper mandatory presumption, but argues that other language in the instructions cured this defect or, in the alternative, that the defect was harmless error. We conclude that the trial court's instructions on malice were constitutionally deficient, but find that the error was harmless.

■ Evidentiary charges in jury instructions that relieve the government of its burden of proving each element of the offense beyond a reasonable doubt violate the Due Process Clause of the Fourteenth Amendment. *See Sandstrom*, 442 U.S. at 520–24, 99 S.Ct. at 2457–59. Accordingly, jury instructions that create mandatory presumptions—which instruct a jury that it must infer an elemental fact, such as malice,[6] from a basic fact, such as a knowing act—may result in such a violation. *See Hill v. Maloney*, 927 F.2d 646, 648–49 (1st Cir.1990). The challenged portion of the jury instructions on malice stated, "[w]here the fact of killing is shown and there are no circumstances to disclosed [sic] tending to show justification or excuse, there is nothing to rebut the natural presumption of malice." Trial Tr. at 2015. The Commonwealth concedes that this portion of the instruction created an impermissible mandatory presumption on the malice element.

■ Even if a jury instruction creates an impermissible mandatory presumption, we must still consider "whether other parts of the instruction explained 'the particular infirm language to the extent that a reasonable juror could not have considered the charge to have created an unconstitutional presumption.'" *Hill*, 927 F.2d at 649 (quoting *Francis v. Franklin*, 471 U.S.

---

**6.** There is no dispute that the Commonwealth bears the burden of proving malice, a state of mind that is a prerequisite to a finding of either first or second degree murder. *See Sinnott v. Duval*, 139 F.3d 12, 21 (1st Cir.

1998). The Commonwealth can satisfy this burden by showing that the defendant, without excuse or justification, possessed an intent to kill or cause grievous bodily harm. *See id.*

307, 315, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985)). To make this assessment, we must "determine whether other language in the charge *explains* the infirm language sufficiently so that there is no reasonable likelihood that the jury believed it must find malice if it found petitioner did the [killing without excuse or justification]." *Id.* at 651.

Although other portions of the instructions correctly described the malice element, nothing in those statements informed the jury that the presumption was permissive rather than mandatory. Thus, we conclude that the instructions on malice created an impermissible mandatory presumption that was not cured by other language in the instructions.

 Although we conclude that the jury instructions on malice were constitutionally deficient, we must still consider whether the trial court's error was harmless. *See Libby,* 19 F.3d at 738. We conclude that it was.

 A *Sandstrom* error may be considered harmless if the Commonwealth shows that the error did not have a substantial and injurious effect or influence on the jury's verdict. *See id.* at 739–40. After reviewing the record, we conclude that the jury instructions on malice did not have such an effect.

The record provides substantial evidence that the defendant killed Rimer with the requisite state of mind to establish murder in the first degree. The undisputed evidence showed that Rimer was killed as a result of several blows to the head with a blunt object. Testimony also showed that Rimer was asleep at the time of the attack. At trial, the parties disputed the identity of the killer, not whether he possessed the requisite state of mind for a murder conviction. *Cf. Neder v. United States,* —— U.S. ——, ——, 119 S.Ct. 1827, 1837, 144 L.Ed.2d 35 (1999) (recognizing that trial

court's failure to instruct jury on element of offense is harmless when existence of element is uncontested and supported by overwhelming evidence). The jury also found that Moore killed Rimer with deliberate premeditation, a prerequisite to first degree murder. This court has recognized that a jury's finding of deliberate premeditation is generally inconsistent with a finding that the jury relied on presumed intent. *See Doucette v. Vose,* 842 F.2d 538, 542–43 (1st Cir.1988). In light of these considerations, we conclude that the trial court's erroneous instructions on malice did not have a substantial or injurious effect on the jury's verdict. The error was therefore harmless and does not provide a basis for habeas relief.

## III. Prisoner's Dock

Moore, relying on this court's decision in *Young v. Callahan,* 700 F.2d 32 (1st Cir. 1983), asserts that he was deprived of due process by being required to sit in a prisoner's dock throughout trial even though the dock served no security interest in his case. The Commonwealth argues that Moore may not raise this claim of error because he relies on a rule of criminal procedure not announced until after his conviction became final. Although a defendant generally may not rely on a new rule of criminal procedure, we conclude that the rule announced in *Young* was not a "new rule" and that Moore may rely on it to support his claim of error. On the merits, we conclude that the trial court's use of the dock did not result in a deprivation of due process.

### A. *Teague* Analysis

 A defendant alleging constitutional error in a federal habeas proceeding may not generally take advantage of new rules of criminal procedure announced after his conviction has become final.[7] *See*

---

7. Two exceptions apply when the new rule either (1) "places a class of private conduct beyond the power of the State to proscribe or addresses a substantive categorical guarantee accorded by the Constitution," or (2) is a "watershed rule[] of criminal procedure im-

*Teague v. Lane,* 489 U.S. 288, 310, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989) (plurality opinion). However, a case does not announce a "new rule" of criminal procedure if the rule was dictated by precedent existing when the defendant's conviction became final. *See Caspari v. Bohlen,* 510 U.S. 383, 390, 114 S.Ct. 948, 127 L.Ed.2d 236 (1994). A rule is "dictated by precedent" whenever we can say that a state court has acted objectively unreasonably, under existing precedent, in denying the relief the defendant now seeks in federal court. *See O'Dell v. Netherland,* 521 U.S. 151, 156, 117 S.Ct. 1969, 138 L.Ed.2d 351 (1997). "At bottom, ... the *Teague* doctrine validates reasonable, good-faith interpretations of existing precedents made by state courts even though they are shown to be contrary to later decisions." *Id.* (internal quotation marks omitted).

■ This court first held that use of the prisoner's dock in the absence of security concerns violated due process in 1983, *see Young,* 700 F.2d at 37, well after Moore's conviction became final in 1979. The district court concluded that the rule announced in *Young* was not a "new rule" because it was dictated by precedent existing when Moore's conviction became final. *See Moore II,* 924 F.Supp. at 1289–91. We agree with the district court's analysis.

In 1970, the Supreme Court indicated its approval of using physical restraints to control unruly defendants in criminal trials, but stated that such restraints should only be used as a last resort. *See Illinois v. Allen,* 397 U.S. 337, 344, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970). In 1976, the Supreme Court was asked to consider whether compelling a defendant to appear at

plicating the fundamental fairness and accuracy of the criminal proceeding." *Lambrix v. Singletary,* 520 U.S. 518, 539, 117 S.Ct. 1517, 137 L.Ed.2d 771 (1997) (internal quotation marks, alterations, and citations omitted). Because we conclude that Moore does not rely on a "new rule," we need not consider whether either of these exceptions would apply.

trial in prison or jail attire violated his due process rights. *See Estelle v. Williams,* 425 U.S. 501, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976). The Supreme Court answered in the affirmative, holding that defendants may not be compelled to attend trial in prison or jail clothing because it could impair the presumption of innocence. *See id.* at 504, 96 S.Ct. at 1693. The Court recognized that prison or jail attire constantly reminds jurors of the defendant's incarceration and could affect their judgment. *See id.* at 504–05, 96 S.Ct. at 1693. In contrast to the use of physical restraints when they serve a legitimate security purpose, the Court recognized that prison or jail attire furthers no essential state policy. *See id.* at 505, 96 S.Ct. at 1693.

Before Moore's conviction became final in 1979, this court, in dicta, strongly criticized Massachusetts's practice of forcing criminal defendants to sit in a prisoner's dock at trial. *See Walker v. Butterworth,* 599 F.2d 1074, 1080–81 (1st Cir.1979). The *Walker* court noted that confinement in a prisoner's dock was analogous to the compelled use of prison and jail attire condemned in *Williams. See id.* at 1080. The court stated that "[b]ecause confinement in the prisoner dock is unnecessary to accomplish any important state interest and may well dilute the presumption of innocence, the Massachusetts prisoner dock must be considered, as a general matter, to be an unconstitutional practice." [8] *Id.* at 1081. This court squarely confronted the issue in *Young* and held that use of the prisoner's dock, in the absence of security concerns and a curative instruction to the jury, violates a defendant's right to due process. *See* 700 F.2d at 36–37.

8. In *Young,* however, this court recognized that there is a state interest in the use of the dock as a minimum security measure. *See Young,* 700 F.2d at 36 (" 'Although the restraint imposed is minor, it has sometimes proved a sufficient obstacle so that court officers could reach the defendant in time to prevent escape or harm to others.' " ·(quoting *Moore I,* 393 N.E.2d at 908)).

Based on our review of the legal landscape at the time Moore's conviction became final, we agree with the district court's well-reasoned conclusion that use of the prisoner's dock, absent security concerns, would violate a defendant's right to due process. *See Moore II*, 924 F.Supp. at 1289–91. In *Williams*, the Supreme Court recognized the deleterious effect badges of confinement could have on the presumption of innocence and the jury's assessment of the defendant's guilt. *See Williams*, 425 U.S. at 504–05, 96 S.Ct. at 1693. As this court recognized in both *Walker* and *Young*, the Supreme Court's concerns about the effects of prison and jail attire apply with equal force to defendants compelled to sit in a prisoner's dock during trial. *See Young*, 700 F.2d at 34–37; *Walker*, 599 F.2d at 1080–81. As the *Young* court also recognized, the practice of using prisoner's docks in jury trials was nearly non-existent in other jurisdictions, and ABA Standards, relied upon by the Supreme Court in *Williams*, advised against using physical restraints in the courtroom. *See Young*, 700 F.2d at 35–36 & nn. 5–6. In response to Moore's direct appeal, the SJC adopted a prospective rule forbidding use of the dock absent security concerns. *See Moore I*, 393 N.E.2d at 907–08. Although the SJC did not directly address the constitutional issue in *Moore I* (because Moore did not raise a constitutional objection), it reconsidered the practice of using the prisoner's dock in response to this court's *Walker* decision. *See id.* (citing *Walker* and ABA Standards). Based on our review of the legal landscape at the time Moore's conviction became final, we conclude that *Young*'s prohibition on the use of the prisoner's dock, absent security concerns, did not constitute a "new rule" because it was compelled by precedent existing at the time Moore's conviction became final. Therefore, Moore may rely on this rule to support his claim of error.

## B. Merits

■ After reviewing the record in this case, we conclude that the trial court's use the prisoner's dock did not result in a deprivation of due process.[9] First, we note that the trial court was clearly concerned about security when it considered Moore's request to sit at counsel's table. *See Moore I*, 393 N.E.2d at 906, 908; *cf. Young*, 700 F.2d at 35 ("Unlike in . . . *Moore*, there is no evidence here that the trial court was concerned over security."). In response to counsel's request that Moore be allowed to sit at counsel's table in lieu of the dock, the judge said, " 'I will make some inquiry from the sheriff to see, because the Sheriff has, of course, the responsibility of security, so I will make some inquiry with reference to your request to have him sit next to you. That depends on security.' " *Moore I*, 393 N.E.2d at 906. Although the judge did not state on the record the reasons he ultimately denied Moore's request to sit at counsel's table, he clearly articulated security concerns and indicated that he would base his decision on those concerns. Furthermore, the court also complied with *Young*'s requirement that a curative instruction be given to help alleviate the potential prejudicial effects of the dock. *See* Trial Tr. at 577. In light of these circumstances, we conclude that Moore's placement in the dock did not result in a deprivation of due process.

■ Even if we were to conclude that the trial court's use of the prisoner's dock violated due process, we would agree with the district court's well-reasoned conclu-

9. In addition to its effect on jurors, Moore also contends that the dock deprived him of access to counsel and affected his ability to hear the proceedings. The SJC found that Moore was able to consult counsel throughout trial and recognized the trial judge's statement that the courtroom was equipped with an amplification system. Nothing in the record supports a conclusion that the SJC's findings in this regard were erroneous. *See Sumner v. Mata*, 449 U.S. 539, 546–47, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981) (applying § 2254(d)'s presumption of correctness to state appellate court's findings of fact).

sion that the error was harmless. *See Moore II*, 924 F.Supp. at 1294–95.

As the district court properly recognized, the evidence presented at trial of Moore's guilt was highly compelling. *See id.* at 1292 (recounting the substantial evidence of Moore's guilt). Five independent witnesses testified that Moore admitted to killing Rimer. Moore had a motive for killing Rimer, and the physical and circumstantial evidence placed Moore at the crime scene. Moore testified at trial, and we agree with the district court's conclusion that the jury's impression of Moore was more likely the result of his testimony and the government's evidence, rather than speculation about his placement in the dock. Under these circumstances, we conclude that even if the trial court's use of the prisoner's dock did deprive Moore of due process, that error did not have a substantial and injurious effect on the jury's verdict and, thus, was harmless.

## IV. Conclusion

In sum, we conclude that Moore's challenge to the jury instructions on reasonable doubt is barred by adequate and independent state procedural grounds. After reviewing the merits of Moore's challenge to the jury instructions on malice, we find constitutional error but conclude that it was harmless. Finally, we conclude that Moore's placement in the prisoner's dock did not violate his due process rights. The district court's dismissal of Moore's petition for writ of habeas corpus is **AFFIRMED.**

LIPEZ, Circuit Judge, (Concurring).

I agree with the result reached by my colleagues. With one exception, I also agree with the reasoning set forth in their opinion. That one exception relates to the conclusion that Moore's placement in the prisoner's dock did not result in a deprivation of due process. The district court chose not to resolve the due process issue raised by the use of the dock, noting the failure of the trial judge to find an explicit

security justification for its use. *See Moore II*, 924 F.Supp. at 1293. The district court further noted that this failure to set forth such a justification "impedes meaningful appellate (or collateral) review of his decision." *Id.* I agree with that proposition. Therefore, taking the approach used by the district court, I conclude that relief is not warranted because the error in the use of the prisoner dock, if any, was harmless.